1998-NMCA-040

955 P.2d 214

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Larry BALDONADO, Defendant–
Appellant.**

**No. 16748.**

Court of Appeals of New Mexico.

Feb. 5, 1998.

Tom Udall, Attorney General, Bill Primm, Assistant Attorney General, Santa Fe, for Plaintiff–Appellee.

William J. Friedman, Santa Fe, for Defendant–Appellant.

## OPINION

BUSTAMANTE, Judge.

1. This child criminal sexual contact case presents difficult questions involving the proper balance to be struck between the due process imperative to provide reasonable notice of charges against a criminal defendant, and the need to allow the State reasonable leeway in prosecuting crimes committed against children of tender years. The issue is presented most clearly where, as here, the State encounters difficulty specifying when the wrongful conduct occurred, and in response resorts to a lengthy charging period in the indictment. Here the charging period was two years. Given the sad and disturbing frequency with which the courts address child sexual abuse allegations, the issue is one of "evident societal significance." *People v. Jones*, 51 Cal.3d 294, 270 Cal.Rptr. 611, 613, 792 P.2d 643, 645 (1990). That same frequency assures that we do not write on an entirely clean slate. *See State v. Altgilbers*, 109 N.M. 453, 786 P.2d 680 (Ct.App.1989).

2. On the record before us we are not convinced that the State fulfilled its duty to provide adequate specification of the times of the alleged offenses. We remand to the district court for a hearing on (1) whether the State could reasonably have provided greater specificity of the times of the alleged offenses and (2) if so, whether the State's failure in this regard prejudiced Defendant. If the answer to both questions is yes, Defendant's convictions must be reversed, and Defendant can be retried only after the State responds adequately to Defendant's Motion for a Bill of Particulars.

## PROCEEDINGS IN THE DISTRICT COURT

3. On January 5, 1994, Defendant Larry Baldonado was charged in a two-count indictment with criminal sexual contact (CSC) of a minor under thirteen years of age, contrary to NMSA 1978, Section 30–9–13(A) (1991), a third degree felony. Count one charged Defendant with touching or applying force to the victim's intimate parts, while count two charged Defendant with causing the victim to touch his intimate parts. The victim identified in the indictment was Defendant's niece.

4. The indictment stated that the crimes occurred "[o]n or between October 1, 1990 and October 1, 1992." In accordance with Rule 5–501 NMRA 1998, Defendant was provided with full discovery, including the grand jury tapes in his case. Defendant did not complain to the district court, and does not complain here, that the State did not comply with its discovery obligations. Instead, despite full discovery, Defendant filed a "Motion for Bill of Particulars" (Motion) requesting an order requiring the State to disclose the "approximate time that the alleged criminal acts charged in the indictment occurred." In support of his Motion, Defendant asserted that the discovery materials and grand jury tapes had not provided any information as to the approximate date of the offense in that "the statement by the alleged victim, as well as the other witnesses for the State are contradictory in nature concerning the date of the alleged offense as being any time frame approximate [sic] three years ago and as recently as September, 1993."

5. Apparently in response to the victim's grand jury testimony that the offense occurred at her grandmother's house, and that Defendant was residing there at the time, Defendant asserted in the Motion that he had not lived at his mother's house for several years and that he intended to provide an alibi defense once he was given the "approximate dates" the offense was alleged to have occurred.

6. At the hearing on the Motion, Defendant argued generally that the two-year time frame was simply too broad to provide reasonable notice of the charges against him, and that it made it difficult, if not impossible,

to prepare an alibi defense. Defendant again asserted that he had "resided for the most part out of town for the last four years."

7. Defendant also alerted the court to a problem raised by testimony which provided the only evidence of a specific time frame potentially to be found in the discovery material. This problem related to a bruise found on the victim by her grandmother. The discovery materials indicated the victim first attributed the bruise to a kick from a school mate. However, when she told her parents about Defendant's acts, she stated that the bruise had not been caused by a kick but rather by Defendant. In contrast, the victim did not mention the bruise at all in an interview with a Health and Human Services Department social worker conducted a few days after the initial disclosure, as part of the investigation of the allegation. Nor did she mention the bruise in her grand jury testimony.

8. There was evidence from the victim's mother that the bruise had appeared earlier in the same school year—1993—when the allegation of abuse was first made. This would place the bruise incident in August or September 1993. There was other evidence that would place the discovery of the bruise at a year prior to the victim's allegations of abuse. At the hearing on his Motion, Defendant expressed a concern that the bruise incident could be used to expand the already broad time frame, or could be used as evidence of abuse occurring during the two-year time period of the indictment, thus making the defense a guessing game. If the bruise occurred in the fall of 1993, Defendant wanted to exclude its mention at trial and he wanted to prevent a motion to expand the indictment to cover that time frame.

9. Relying on *Altgilbers,* 109 N.M. at 467, 786 P.2d at 694, the State responded that it was not required to provide any more information as to time frames than that contained in the indictment. The prosecutor explained that the two-year time frame had been chosen because the victim had stated that the incident—or incidents—had occurred when she was five or six years old and the victim's birthday was October 1, 1985. The State characterized the time span as "huge" but asserted that the victim could not provide more specificity. She argued that, under *Altgilbers,* 109 N.M. at 467, 786 P.2d at 694, "[n]otice need be only specific enough to enable the accused to prepare his defense and to protect against double jeopardy." The State summarized its position by saying it was not required to give any more than what it had in its files. The State agreed that it would not be able to pursue any other claims against the Defendant for this two-year period, thus obviating Defendant's double-jeopardy concerns. As a result, Defendant does not raise any double-jeopardy issues on appeal.

10. The trial court took the matter under advisement and eventually denied Defendant's Motion by written order entered on the second, and concluding, day of the trial.

11. At trial, the State's witnesses included the victim, her mother, and father. The child testified that Defendant touched her twice, and had her touch him twice, at some time when she was in kindergarten or the first grade. She was not more specific than that, though she did deny anything happened when she was in the second grade. She further testified that the first time anything happened she and Defendant were in her grandmother's living room and her grandmother was outside. Another time it happened when Defendant was baby-sitting her. The child did not provide any specific time markers for the touching. On cross-examination, and redirect examination, the child stated that the bruise on her "private parts" had been caused by Defendant even though when her grandmother first saw it, she said it had been caused by a school mate kicking her. She could not recall when the bruise occurred, though she denied it was in the second grade. During her interview with the social worker from the Health and Human Services Department, which was played during the trial, the child denied that Defendant ever hurt her.

12. The victim's father testified primarily about the circumstances surrounding his daughter's initial revelation to him about Defendant's conduct. In addition, he confirmed that the child attributed the bruise to Defendant. Father was unsure about the timing of

the bruise. While at trial he felt it had occurred while victim was in the second grade, in his first interview with the police in December 1993 he indicated it could have happened as much as a year prior to the interview. Finally, Father testified he thought Defendant had lived with his mother for some indefinite part of the time between October 1990 and October 1992.

13. The child's mother testified that at some undefined time during the two-year charging period, Defendant lived with his mother in Las Cruces, though she was personally unaware of any time when Defendant was at the home alone with the victim. The mother testified that the bruise occurred when victim was in the first grade. Mother related her conversation with the child's grandmother about the bruise and her visit with the child's teacher and the school nurse about the incident. Mother's testimony was murky about the exact date of her visit to school, but she was clear it was during the first grade because she spoke with Mrs. Ballard, the child's first grade teacher.

14. Mother's testimony at trial concerning the timing of the bruise was different from her statement to the investigating police officers made a few days after the initial disclosure. When speaking to the police officer, Mother placed the bruise as occurring in the fall of 1993. The investigating officer testified that she was particularly concerned to learn about the bruise because it was the only indication available of a specific time for the incidents. Despite her interest in a more specific date, the officer never spoke to the teacher or nurse at the child's school.

15. Defendant's mother testified Defendant never lived with her after he moved away from the family home, and that he was never alone with the victim. She denied allowing Defendant to baby-sit the victim, however, the investigating officer testified Defendant's mother admitted to her in an interview that she had let him baby-sit victim.

16. Defendant testified he left his mother's residence when he was seventeen to join the service and had not lived with her any time within the five to six years before the trial. Defendant stated he moved to Roswell in 1991 and subsequently to Carlsbad. Defendant denied ever baby-sitting the victim for his grandmother and denied any improper contact with the child.

17. At the conclusion of trial, the jury convicted Defendant of both counts.

*ANALYSIS*

18. Defendant argues that the two-year charging period is so overly broad as to deprive him of his due process right to reasonable notice of the charges against him. His position is that he cannot be expected to glean enough information from any source to sufficiently identify the specifics of the charge to allow him to mount any defense except a general denial. In particular, he argues that his ability to assert, much less prove, an alibi defense has been entirely precluded by the broad charge. Defendant argues that depending on the specificity of the time frames, he could advance a perfect alibi defense. Contrary to the position Defendant took in his briefing, he could not assert a perfect alibi defense for the entire two-year period of the indictment because he admits he was present in Las Cruces for a portion of the time covered by the indictment. But Defendant maintains he cannot even attempt such a defense for any portion of the charging period if the range of time for the actual occurrence is not narrowed.

19. The State responds that it cannot provide a more specific time frame because the victim is unable to be more specific given her young age. Further, it argues that given the investigative and proof problems it faces in cases such as this, it should not be required to do anything more than it did here: that is, frame the charge as it determines appropriate and provide full discovery. Arguing that the societal interests it is protecting are too important and the victims of these crimes are too vulnerable to unduly restrict prosecution, the State asserts it should not be foreclosed from attempting to prove charges such as these simply because the time frame it necessarily must rely upon is broad.

20. The issue is thus neatly framed. Both parties argue principles and present practical considerations which are in their

own right forceful and compelling. As the Supreme Court of Connecticut observed, in cases such as this "there exists a profound tension between the defendant's constitutional rights to notice of the charges against him and to present a defense, and the state's interest in protecting those victims who need the most protection." *State v. Blasius*, 211 Conn. 455, 559 A.2d 1116, 1119 (1989). Prosecutors do face difficulties in prosecuting unwitnessed child sexual assault cases, and the younger the child the more difficult the problems become. The State's difficulties need not be explored here in excruciating detail, but it is not difficult to appreciate that "[y]oung children cannot be held to an adult's ability to comprehend and recall dates and other specifics." *State v. Fawcett*, 145 Wis.2d 244, 426 N.W.2d 91, 94 (Wis.Ct.App. 1988). The predictable limitations of young witnesses should not be turned into a reason to prevent prosecution of their abusers.

■ 21. On the other hand, due process under the Fourteenth Amendment to the United States Constitution and art. II, § 14 of the New Mexico Constitution require the State to provide reasonable notice of charges against a person and a fair opportunity to defend; rights which "may not be ignored or trivialized." *See Fawcett*, 426 N.W.2d at 94. It bears noting that the phenomenon of long charging periods occurs predominantly in child sexual abuse cases, for the reasons already noted. In "frank recognition" of the difficulties posed by young, sometimes reluctant victims as witnesses, courts "have been less vigorous in requiring specificity as to time and place when young children are involved than would usually be the case where an adult is involved." *State v. Wilcox*, 808 P.2d 1028, 1033 (Utah 1991).

22. Contrary to the State's position below, *Altgilbers* does not control the outcome here. This case came to this Court in a different procedural posture. In *Altgilbers*, the defendant initially complained that the State improperly multiplied the number of counts by artificially dividing the total time during which the continuing abuse occurred into three month intervals. *Altgilbers* thus presents the reverse of the issue we address here. In addition, defendant's lack of notice

was raised for the first time on appeal. We ruled he had failed to preserve the issue. 109 N.M. at 467, 786 P.2d at 694. The remainder of the discussion regarding notice in *Altgilbers* does not address, much less preclude, the test we adopt today.

■ 23. Difficulty arises in fashioning a resolution which addresses both sides of the issue and does not trample or subsume either side. Because the factual circumstances of these cases are predictably variable, and because the notion of due process is necessarily malleable and fact-dependent, we first reject imposition of any per se rule. *See Dell'Orfano v. State*, 616 So.2d 33, 36 (Fla.1993) (rejecting per se rule); *State v. Wade*, 306 S.C. 79, 409 S.E.2d 780, 782–83 (1991) (same). Here, we review a two-year charging period. While this length of time concerns us on its face, and surely is approaching the outer edges of constitutional propriety, we are loath to hold that it is too long as a matter of law. It is possible that a two-year period, or larger, may be the most narrow time frame the prosecutor can be required to muster in an appropriate case.

■ 24. On the other hand, we reject the approach taken by some jurisdictions which, in effect, denies a constitutional dimension to the problem. Some jurisdictions appear ready to approve charging periods of any length, on the theory that time is not an element of the offense and is thus not required to be addressed in the indictment. *See, e.g., Dilbeck v. State*, 594 So.2d 168, 174 (Ala.Crim.App.1991); *State v. Martinez*, 250 Neb. 597, 550 N.W.2d 655, 657 (1996). Other jurisdictions, in addition to noting that time is not an element of the offense, depend on full discovery by the State to cure any difficulty faced by the defendant in meeting the charge. As the court in *Wilcox* observed:

We have suggested that so long as the elements of the crimes are covered by the factual allegations and the defendant is fully apprised of the State's information regarding the time, place, and date of the crimes, any lack of factual specificity goes not to the constitutional adequacy of the

notice, but to the credibility of the State's case.

808 P.2d at 1033.

25. Offering the advantages of a per se rule, the *Wilcox* approach nonetheless fails to give adequate recognition to the right to reasonable notice. Even granting the defendant discovery of the State's evidence may not provide adequate notice if the State, perhaps for tactical reasons, has simply failed to engage in investigational efforts to narrow the time period. Due process requires more than simple notice of the prosecution's evidence in these circumstances.

26. We find more persuasive, and more salutary, the approach taken by those courts which review on a case-by-case basis whether an indictment is reasonably particular with respect to the time of the offense. *See People v. Morris,* 61 N.Y.2d 290, 473 N.Y.S.2d 769, 773–74, 461 N.E.2d 1256, 1260–61 (1984); *Fawcett,* 426 N.W.2d at 94–95; *In re K.A.W.,* 104 N.J. 112, 515 A.2d 1217, 1222 (1986); *State v. Mulkey,* 316 Md. 475, 560 A.2d 24, 30 (1989). These cases examine the issue by applying a multi-factor test designed to parse out the actual situation faced by the State in investigating and constructing its case. The test reviews the reasonableness of the State's efforts at narrowing the time of the indictment and measures the potential prejudice to the defendant of the time frame chosen by the State. No one factor is determinative. Rather, each can be expected to play a different role depending on the facts of each case.

27. Taken from *Morris* primarily, with a few additions, the factors include, but should not necessarily be limited to, the following:

1. The age and intelligence of the victim and other witnesses, and their ability to particularize the date and time of the alleged offense;
2. The surrounding circumstances; including whether a continuing course of conduct is alleged, as opposed to a relatively few, discrete or isolated events;
3. The extent to which defendant had frequent, unsupervised access to the victim;
4. The nature of the offense, including whether it is likely to occur at a specific time or is likely to have been discovered immediately;
5. The length of the alleged period of time in relation to the number of individual criminal acts alleged;
6. The length of time asserted in the indictment;
7. The passage of time between the period alleged for the crime and the time the abuse was asserted and/or the time defendant was arrested and/or indicted;
8. The extent and thoroughness of the State's efforts to narrow the time frame; and
9. Whether the defendant can assert a plausible alibi defense.

28. Application of these factors cannot, and should not, be reduced to a formula. This approach requires trial courts to "engage in a most delicate exercise. It demands judging at its best ." *In re K.A.W.,* 515 A.2d at 1222. We agree with the following statement from the New Jersey Supreme Court:

> The list is simply illustrative. As the cases surface, other considerations doubtless will come to mind, and the weight to be accorded the factors will vary according to the circumstances of the case. We do not insist on adherence to any particular formula. Rather, what is required is an especially diligent scrutiny of the facts of the incident as they may be disclosed. The aim is to narrow the time frame of the occurrence as complained of—if not to the extent of an exact date or dates, then possibly in respect of seasons of the year, or incidents in the victim's life such as a death in the family, or a change in a family member's job routine, or the beginning of the school year or of vacation time or of extracurricular activities. When the trial court is satisfied that these sources of information have been exhausted, it will then be in a position to strike the necessary balance to determine whether "fair notice" has been given.

*Id.,* at 1222–23. The Wisconsin Court of Appeals provided a list of useful potential variations of the inquiry in its opinion in *Fawcett,* 426 N.W.2d at 94–95. For example, in *Fawcett* the court wrote:

The "reasonableness test" analysis depends upon the nature of the challenge asserted by the defendant.

In some cases, the claim is made that the interval alleged for a particular crime is so excessive that, on its face, it is unreasonable and the case should be dismissed. *Morris*, 473 N.Y.S.2d at 772–73, 461 N.E.2d at 1259–60.

In other cases, the defendant contends that the State knew of a specific date in time but purposely did not allege this information. If this charge is borne out and good cause for withholding the information is not shown, the charge should be dismissed. *Id.* at 773, 461 N.E.2d at 1260. In still other cases, a defendant may contend that the prosecutor is able but has failed to obtain more specific information due to a lack of diligent investigatory efforts. *Id.* . . . In evaluating the possibility that a more specific date could have been obtained through diligent efforts, the court may look to the following factors to determine whether a more specific date could have been alleged: (1) the age and intelligence of the victim and other witnesses; (2) the surrounding circumstances; and (3) the nature of the offense, including whether it is likely to occur at a specific time or is likely to have been discovered immediately. *Id.*

If after this exercise the state is found to have exerted diligent investigatory efforts, the charging document should then be examined to determine whether, under the circumstances, the designated period of time set forth is reasonable. *Id.*

426 N.W.2d at 94–95, n. 2. We recommend the discussion to counsel and the trial courts as a starting point for digestion of the test.

▬ 29. The nine factors listed above relate to both whether the indictment is reasonably particular and whether the defendant suffered prejudice. If the court finds that the charge was not stated with reasonable particularity, it must then look to see if the Defendant is prejudiced by that failure. *See State v. Hoxsie*, 101 N.M. 7, 10, 677 P.2d 620, 623 (1984) ("In the absence of prejudice, there is no reversible error.") *overruled on other grounds by Gallegos v. Citizens Ins.*

*Agency*, 108 N.M. 722, 731, 779 P.2d 99, 108 (1989). One thing we do wish to make clear is the appropriate use of a potential alibi defense as a factor. This factor should be used as any other to help measure the potential prejudice to a defendant in meeting the charges. However, the possibility of an alibi should not be given overriding weight. A plausible alibi may become of decisive importance in a given case, but, as noted in *Fawcett*, an alibi defense does not change the charges against the defendant or suddenly incorporate time as a necessary element of the offense. *Id.* at 96 n. 3. Nor do we retreat from the observation in *Altgilbers* that "we know of no principle of law that requires the state to rely only on evidence that lends itself to an alibi defense." 109 N.M. at 467, 786 P.2d at 694.

30. Turning to the case before us on appeal, the inquiry we have outlined was not conducted by the trial court. Of course, we do not fault the court since the procedure we describe here is a matter of first impression in New Mexico. However, the lack of any record discussing or developing a factual background specific to the factors we have identified counsels against any attempt by this Court to measure the reasonableness of the indictment against Defendant.

31. We are particularly concerned about the indications in the record that the State did nothing to try to shorten the charging period to less than two years. It does not appear that there was any attempt to seek specifics from the child or other sources that would have made it possible to correlate the alleged offenses with any events (or even seasons of the year) that would have made possible a shorter charging span. Of special note are the events concerning the bruise found by the child's grandmother. The testimony concerning the bruise is anything but clear, yet two observations can be made with some confidence. First, one view of the evidence could place the incident within or near the indictment time frame. Thus, the jury may have relied on the bruise to some degree for its verdict. Second, the bruise was the only incident which potentially provided some source of verification as to time (other than the child or her parents). Despite this, no

one on behalf of the State ever spoke with the child's teacher or the school nurse (or anyone else) in an attempt to pinpoint when the bruise appeared. Depending, of course, on the outcome of the inquiry, the bruise might have played no role at all in the case, or it might have provided a clue to a time as to which Defendant may, or may not, have had an alibi. Either way, the matter was worthy of exploration by the State.

32. If the district court finds that the charging period was not "reasonably particular," it must then address whether Defendant was prejudiced by the over broad period. Defendant's principal contention regarding prejudice is that the excessively long charging period prevented him from establishing an alibi defense. At trial, however, he, his mother, and his aunt each testified that he was *never* alone with the child. His mother even testified that he was never at her home for more than fifteen minutes at a time, when they visited over coffee or the like. This alibi defense would be applicable to any charging period, so the two-year period does not appear to have created any prejudice. Perhaps additional alibi evidence would have been available with respect to a shorter charging period, but if the district court determines that, say, a one-month or three-month period would have been adequate, then it is unclear that Defendant could have had any evidence available to establish his absence from Las Cruces during that entire period of time. In any event, we leave the determination of prejudice to the district court. We do not foreclose the possibility that Defendant may have been able to construct a credible alibi defense with respect to a narrower time frame.

33. Given our recognition of at least potential prejudice to Defendant as a result of the two-year time span of the indictment, and the failure or refusal of the State to do anything more than provide discovery, we return the matter to the trial court for a new hearing based on the test we have articulated.

## CONCLUSION

34. We remand to the trial court, with instructions to consider the indictment and Defendant's Motion for a Bill of Particulars in light of this Opinion. If the trial court determines that the State made reasonable efforts to narrow the time frame and that the time frame is reasonable, or if it determines that Defendant suffered no prejudice, the conviction shall stand. If, however, the Court determines that the State could reasonably have provided greater specificity of the times of the alleged offenses and that the State's failure in this regard prejudiced Defendant, the convictions must be reversed and the charges must be dismissed unless the State provides proper notice through a revised response to Defendant's Motion for a Bill of Particulars.

35. **IT IS SO ORDERED.**

HARTZ, C.J., and APODACA, J., concur.