# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**JEANNETTE and GEORGE SHEPARD**,

   Petitioners-Appellants,

v.                                                        **NO.   28,376**

**KRISTINA MARIE OZZELLO**,

   Respondent-Appellee,

and

**IN THE MATTER OF THE KINSHIP
GUARDIANSHIP OF WILLIAM K.**,

   Child.

**APPEAL FROM THE DISTRICT COURT OF GRANT COUNTY
H.R. Quintero, District Judge**


Jeannette and George Shepard
Silver City, NM

Pro Se Appellants

Atencio Law Office PC
Kimberly L. Halpain
Albuquerque, NM

for Appellee

**MEMORANDUM OPINION**

**ROBLES, Judge.**

Jeannette and George Shepard (Grandparents) appeal the revocation of a kinship guardianship of William K. (Child). On appeal, Grandparents raise multiple points of error, which we consolidate into six claims: (1) there was inadequate notice and service; (2) the Uniform Child-Custody Jurisdiction Enforcement Act (UCCJEA), NMSA 1978, § 40-10A-101 (2001), applied to this case; (3) statutory procedure was not followed; (4) the district court applied the wrong standard; (5) there was insufficient evidence; and (6) their due process rights were violated. We address each issue in turn and affirm.

**I. BACKGROUND**

In 2004, Kristina Ozzello (Mother) had various problems with drugs and the law. Believing that she was facing mandatory incarceration, Mother signed a document consenting to a kinship guardianship for her four-year-old biological son. She then began drug rehabilitation, secured employment, obtained a residence, and maintained the conditions of her probation. Mother was never incarcerated, but her probation continued. Meanwhile, Child was in the care of Mother's parents—Grandparents in this appeal—and they became Child's primary caretakers. The record is not entirely clear how much time Mother spent with Child during those

several years, but Mother alleges that the contact was continuous and frequent, and Grandparents do not argue otherwise. The record does not state how often Child spent the night at Mother's home, but Child did spend the night periodically. During the summer of 2007, Grandparents allowed Mother to have Child at her home for periods as long as one week per visit.

On August 1, 2007, acting pro se, Mother filed three motions with the district court unbeknownst to Grandparents. The motions were for a revocation of the kinship guardianship, the appointment of a guardian ad litem (GAL), and judicially-enforced visitation rights. The next day, Mother filed a request for a hearing, but only requested a hearing on the motions to appoint a GAL and visitation. Copies of all the paperwork were sent to Grandparents. On August 8, the district court issued an order to reopen the case and set a date of September 12, for a hearing on Mother's motion for revocation of kinship guardianship.

On August 17, Grandparents, also acting pro se, filed a motion to dismiss and vacate the hearing or to compel mediation. Notice that Grandparents' motion to dismiss would be heard with the other pending motions was mailed by the district court. Three days later, Mother filed and mailed a response, stating that she did not

3

object to the request for mediation, but that she did still wish to have a hearing "for the purpose of appointing a [GAL] and setting a visitation schedule."

On the date of the hearing, the district court began the proceedings by stating: "We are here on [Mother's] motion to terminate the guardianship and [Grandparent's] response and the request for mediation by one of the parties." After an opening statement, Mother presented five witnesses, including her probation officer, her substance abuse counselor, and her employer of the previous three years, all of which testified to matters concerning either her sobriety, her hard work and reform, or her strong desire to be permanently reunited with Child. Grandparents stated that they did not have any witnesses because they thought the scope of the hearing was on a motion to dismiss, the appointment of a GAL, and a visitation schedule. Grandparents again moved to dismiss and, in the alternative, requested mandatory mediation and for Mother to amend her petition, which they felt was statutorily insufficient. The district court denied the motion to dismiss and ruled that the evidence was clear and convincing, and that the circumstances that led to the kinship guardianship were no longer present. The district court then ordered both parties into mandatory mediation, ordered each party to make a best and worst case scenario transition plan to bring to the mediation, and appointed a parenting coordinator to conduct interviews and write

4

a report for the court. The district court stated that it was the hope that mediation would help, but that the ultimate result as "the evidence stands now" would be the termination of the kinship guardianship, and that an order to terminate the kinship guardianship would not be entered "until there has been a mediation." The following day, the district court entered an order with findings that stated that Mother was now in a position to assume her parental rights, and that it was in Child's best interest to be transitioned back into Mother's care. On the same day, the district court entered another order, holding that a final hearing on the merits would not be set until the ordered mediation was completed, and no transition plan would be approved until mediation was completed.

Following the hearing on September 12, 2007, Grandparents hired an attorney, who promptly filed a motion to set aside, stating that Grandparents believed that the previous hearing would not encompass revocation of the kinship guardianship, and that a GAL was not appointed as statutorily mandated. They requested the district court to appoint a GAL and to set aside portions of the order that were not addressed in Mother's request for hearing. A second hearing was requested and set for October 30. At that hearing, Grandparents requested a GAL be appointed. The district court, citing financial concerns for the pro se parties, noted that a court- employed, parenting coordinator had already been appointed as an accommodation/alternative method

whose services would duplicate those of a GAL. The district court, however, did give a copy of the parenting coordinator's report to Grandparents, appointed a GAL, and responding to Grandparents' attorney's assurances, remained hopeful that the parties could work out their differences through mediation. The district court then set an evidentiary hearing for December 6 on Grandparents' motion to set aside. At the hearing of December 6, 2007, the GAL was not present, but his report was given to the district court and all parties prior to the hearing. No objection was raised concerning the GAL's absence, and Grandparents' attorney stated that his clients were "basically . . . in agreement" with the parenting coordinator's and the GAL's reports. The record reflects that the GAL interviewed Mother's probation officer, Child's health care provider, school counselor, and therapist, as well as visited Grandparents' and Mother's homes when Child was present. The GAL concluded that it was in Child's best interest "if a transition plan of six months [was] implemented to reintegrate [C]hild into [Mother's] home." Grandparents presented witness testimony from Child's psychologist, who recommended a transition plan anywhere from three to six months, and suggested that it was in Child's best interest to maintain a relationship with Grandparents. Still acting pro se, Mother argued that Child had been in a state of transition into her home for over a year, and that an extensive transition

plan was not necessary. The district court noted that custody had not been restored to Mother, but when it was, the case would transform into a question of Grandparents' visitation. The district court then implemented the first four weeks of Grandparents' transition plan, and stated that the case would now be considered by the court as a "Grandparent Oral Petition for Visitation" and, at the end of four weeks, the court would have a written parenting plan, which would outline a visitation/custody decision. The court then asked for Grandparents' attorney to draft the order. The order that resulted, stated "[t]hat based upon the testimony taken and reports submitted, this matter shall now be treated as a Petition for Grandparent Visitation." Additionally, the order gave the parties four weeks to come to an agreement as to a visitation schedule, or the district court would enter an order addressing visitation.

On January 7, 2008, another order was entered by the district court, stating that the parties had attempted and failed to reach an agreement regarding visitation. The order further stated that "[t]emporary guardianship with [Grandparents] has previously been revoked[,]" and that Mother was to have "sole physical custody." A visitation schedule for Grandparents was included in the order. This appeal by Grandparents, acting pro se, followed.

**II. DISCUSSION**

On appeal, Grandparents raise multiple claims of error, which we have consolidated into six issues. We discuss each in turn.

**A.    Service and Notice**

Grandparents claim that they were not served in accordance with Rule 1-004 NMRA, and that they did not have proper notice about what the scope of the September 12 hearing would entail. An appellate court is deferential to facts found by a trial court, but reviews conclusions of law de novo. *Strata Prod. Co. v. Mercury Exploration Co.*, 121 N.M. 622, 627, 916 P.2d 822, 827 (1996). Interpretation of a statute is a question of law, which an appellate court reviews de novo. *See Morgan Keegan Mortgage Co. v. Candelaria*, 1998-NMCA-008, ¶ 5, 124 N.M. 405, 951 P.2d 1066 (filed 1997).

Grandparents argue that they received inadequate service, and that Mother was required to provide service in accordance with Rule 1-089(E) NMRA pursuant to Rule 1-004. However, Grandparents acknowledge that they are raising this error for the first time on appeal, and that they "unknowingly waived their right to service of process by participating in the proceedings[.]" The record is clear that Grandparents received all notices, participated in all hearings, and entered a general appearance in the case, effectively waiving their rights to claims of insufficient service. *See Guthrie v. Threlkeld Co.*, 52 N.M. 93, 96, 192 P.2d 307, 308 (1948) (stating that any action on

the part of the defendant, except to object to the jurisdiction, that recognizes the case as in court will amount to a general appearance).

They further state that, although they may have waived their rights to service, they did not waive Child's rights to service. However, there is no requirement that an eight-year-old child be served with any paperwork in kinship guardianship proceedings. *See* NMSA 1978, § 40-10B-6(B) (2001) (stating that petition and notice of a kinship guardianship shall be served on the child "if he has reached his fourteenth birthday"). Grandparents cite no authority for the proposition that service was defective because Child was not served. When a party cites no authority for a proposition, we assume it was because after a diligent search, they were unable to find authority for support. *In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (holding that issues raised in appellate briefs that are unsupported by cited authority need not be reviewed on appeal).

Grandparents also argue that the district court exceeded the scope of the September 12 hearing. They state that the hearing was supposed to be on the Mother's motions for appointment of a GAL, visitation, and Grandparents' motion to dismiss mandatory mediation. They further claim that, if the hearing was to be on the revocation of the kinship guardianship, a GAL should have been appointed before the hearing. We will address the appointment of the GAL later in the Opinion.

As previously stated, Mother filed three motions, but requested a hearing on only two of those motions. The district court issued an order that reopened the case and set a hearing on Mother's motion for revocation of kinship guardianship, which was mailed to all parties. At the September 12 hearing, Grandparents objected to the hearing after Mother's witnesses had testified, stating that revocation of the kinship guardianship was beyond the scope of what they thought the hearing would concern. Grandparents do not claim that they never received the August 8 order reopening the case, which stated that the motion for revocation would be heard at the September 12 hearing. A district court has wide discretion in controlling how a case will proceed within its courtroom. *See Gonzales v. Surgidev Corp.*, 120 N.M. 151, 154-55, 899 P.2d 594, 597-98 (1995). Pro se litigants are held to the "same standard of conduct and compliance with court rules, procedures, and orders as are members of the bar." *Newsome v. Farer*, 103 N.M. 415, 419, 708 P.2d 327, 331 (1985). The district court provided adequate notice regarding the scope of the hearing.

**B.      Uniform Child-Custody Jurisdiction and Enforcement Act**

Grandparents claim that the UCCJEA applies to this case. We disagree. This Court has previously held that the purpose of the UCCJEA is to "provide jurisdictional clarity and to promote interstate cooperation." *State ex rel. Children, Youth & Families Dep't v. Donna J.*, 2006-NMCA-023, ¶ 10, 139 N.M. 131, 129 P.3d

167. Further, NMSA 1978, Section 40-10A-401 (2001) states that "[i]n applying and construing the [UCCJEA], consideration must be given to the need to promote uniformity of the law with respect to its subject matter among states that enact it." No claims have been made that any of the parties were not residents of New Mexico at any time during this case, and no interstate jurisdiction issues present themselves. The district court had continuing jurisdiction over the kinship guardianship under Section 40-10B-14.

**C.     Statutory Procedure**

Grandparents contend that statutory procedure was not followed in the appointment of a GAL and in the sufficiency of Mother's motion for revocation of the kinship guardianship. In reviewing a sufficiency of the evidence claim, the reviewing court views the evidence in the light most favorable to the prevailing party and disregards evidence and inferences to the contrary. *Weidler v. Big J Enters., Inc.*, 1998-NMCA-021, ¶ 30, 124 N.M. 591, 953 P.2d 1089 (filed 1997). A reviewing court may not assess the weight of evidence, except "[w]here an issue to be determined rests upon the interpretation of documentary evidence." *Maestas v. Martinez*, 107 N.M. 91, 93, 752 P.2d 1107, 1109 (Ct. App. 1988). "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions

demanded by the facts and circumstances of the case." *Sims v. Sims*, 1996-NMSC-078, ¶ 65, 122 N.M. 618, 930 P.2d 153.

Grandparents argue that the district court abused its discretion in failing to appoint a GAL before it had made its decision to terminate the kinship guardianship. They cite NMSA 1978, Section 40-10B-9(B) (2001), which states that "[i]n a proceeding in which a parent of the child has petitioned for the revocation of a guardianship established pursuant to the Kinship Guardianship Act and the guardian objects to the revocation, the court shall appoint a [GAL]." The record shows that a GAL was appointed by the district court at the October 30 hearing, the order was filed on November 13, and the GAL's report was available to the parties on December 4.

It is of note that in Grandparents' August 17 motion to dismiss, Grandparents resisted the appointment of a GAL and requested mediation. At the September 12 hearing, Grandparents did not object when the district court began the proceedings by stating: "We're here on [Mother's] motion to terminate guardianship and to [Grandparents'] response and the request for mediation by one of the parties." No objection from Grandparents came until after Mother's witnesses had testified and been cross-examined by Grandparents. The record reveals that when Grandparents changed their position at the end of the October 30 hearing and requested the appointment of a GAL, one was appointed.

We examine the facts closely on this claim and conclude that the Kinship Guardianship Act was fulfilled, and the district court substantially complied with the statute. Primarily, Section 40-10B-9(B) simply states that a GAL must be appointed "[i]n a proceeding in which a parent of the child has petitioned for the revocation of a guardianship . . . and the guardian objects to the revocation." At the October 30 hearing, the district court appointed a GAL.

It is clear that following the September 12 hearing, the district court was moving in the direction of revocation. However, the actual revocation did not occur until the order following the December 6 hearing written by Grandparents' attorney, which stated that "this matter shall now be treated as a Petition for Grandparent Visitation." The lack of clarity in that order, followed by the next order on January 7, 2008, which stated that "[t]emporary guardianship with [Grandparents] has previously been revoked[,]" seems to suggest that there was never a clear moment when the kinship guardianship was revoked. We look at the district court's verbal comments of the December 6 hearing, and acknowledge that they can be used to clarify a finding, but not to reverse a finding. *Ledbetter v. Webb*, 103 N.M. 597, 604, 711 P.2d 874, 881 (1985). At the final hearing on December 6, the district court had heard from Grandparents' and Mother's witnesses, had reports from the GAL, the parenting coordinator, and the mediator, and had attempted unsuccessfully to have the

13

parties agree on an adequate arrangement. Grandparents' attorney stated that his clients were "basically . . . in agreement" with the parenting coordinator's and GAL's reports, which were recommending transition plans from Grandparents' to Mother's care of Child. While we are sympathetic with Grandparents' position and observe that the district court moved faster on its own agenda than Grandparents' thought adequate to address their numerous and heartfelt concerns, we nonetheless conclude that the district court did not abuse its discretion and substantially complied with the requirements of the Kinship Guardianship Act. However, a district court should use care in following statutory procedure in order to instill confidence in the judicial process.

Grandparents argue that the district court heard and ruled on a "defective" motion for revocation. Essentially, they state that Mother's motion did not have a "transition plan" attached to it as the statute requires. "The person requesting revocation shall attach to the motion a transition plan proposed to facilitate the reintegration of the child into the home of a parent or a new guardian. A transition plan shall take into consideration the child's age, development and any bond with the guardian." NMSA 1978, Section 40-10B-12(A) (2001).

In reviewing Mother's motion, we notice that in the body of the motion, Mother included a section entitled "PLAN FOR TRANSITION," as well as attaching a four-

page affidavit to the motion. Furthermore, at the first hearing, the district court required both parties to write transition plans. The district court did not abuse its discretion. It would be form over substance for this Court to conclude that a transition plan within the body of a motion is inadequate, but if it were stapled to the motion separately, it would suffice.

Grandparents state that the lack of the transition plan is "a jurisdictional defect" as well. They cite no support for this proposition. As we have already stated in this Opinion, we will assume that arguments with no authority for support could not be supported after a diligent search. *In re Doe*, 100 N.M. at 765, 676 P.2d at 1330.

**D.     Application of the Wrong Standard**

At the October 30 hearing, the district court stated that "the standard is whether [Mother is] fit or unfit and whether she poses a risk to [C]hild." Grandparents claim that this was the wrong standard, and that the district court should have employed the "best interest of the child" standard, which would have resulted in a different outcome.

> When a party is challenging a legal conclusion, the standard for review is whether the law correctly was applied to the facts, viewing them in a manner most favorable to the prevailing party, indulging all reasonable inferences in support of the court's decision, and disregarding all inferences or evidence to the contrary.

*Golden Cone Concepts, Inc. v. Villa Linda Mall, Ltd.*, 113 N.M. 9, 12, 820 P.2d 1323, 1326 (1991). An appellate court is deferential to facts found by a trial court, but reviews conclusions of law de novo. *Strata Prod. Co.*, 121 N.M. at 627, 916 P.2d at 827.

In their brief, Grandparents state that the district court applied the parental preference standard and should have instead applied the comparative best interests of the child standard because of the existence of extraordinary circumstances. We interpret Grandparents' argument to be that they were "psychological parents" of Child, and that is a sufficient fact for a court to conclude that extraordinary circumstances exist. The parental preference standard presupposes that, in a custody contest, the best interest of a child is served by being with a biological parent as opposed to a non-parent. *In re Guardianship of Ashleigh R*., 2002-NMCA-103, ¶ 14, 132 N.M. 772, 55 P.3d 984. This rebuttable presumption places the burden on the non-parent to show that the biological parent is unfit before the parent can be denied custody. *Id.* Likewise, the kinship guardianship statute defining the policy and purpose of the act states: "It is the policy of the state that the interests of children are best served when they are raised by their parents." NMSA 1978, Section 40-10B-2(A) (2001).

However, this presumption is never conclusive, and a finding of extraordinary circumstances or serious parental inadequacy may be sufficient to rebut the parental preference presumption. *In re Guardianship of Victoria R.*, 2009-NMCA-007, ¶ 9, 145 N.M. 500, 201 P.3d 169 (filed 2008). In cases where the non-parent caregivers "meet the child's emotional and physical needs on a day-to-day basis for a sufficient period of time that the child comes to view the adult caregivers as the child's actual parents," the non-parents may be viewed as "psychological parents." *Id.* ¶ 14. A showing that "the child will suffer a 'significant degree of depression' if the relationship with the psychological parents is abruptly terminated is sufficient to rebut the presumption that the biological parent is acting in the child's best interests and to establish extraordinary circumstances within the meaning of the [Kinship Guardianship Act]." *Id.* ¶ 16.

We primarily consider whether the district court did in fact apply the wrong standard. In the September 13 order, the district court held that it was in Child's best interest to transition him back into Mother's home. This conclusion is supported by the fact that the district court heard testimony the day before issuing the order and stated that as "the evidence stands now," the ultimate result would be the termination of the kinship guardianship. Grandparents did not present any witnesses to the district

court until the final hearing on December 6. No findings were made by the district court concerning serious parental inadequacy, extraordinary circumstances, or psychological parents.

At the December 6 hearing, Child's psychologist testified that Grandparents had become Child's psychological parents, and that it would be in Child's best interest to maintain a relationship with them. However, the psychologist never recommended that Child should not be transitioned into Mother's home. Additionally, the GAL's report stated that "[b]ased on [Mother's] change of circumstances, the age of [C]hild, the time needed to complete the first grade[,] and the bond [that C]hild has created with all parties[,] it would serve [C]hild's best interest if a transition plan of six months be implemented to reintegrate [C]hild into [Mother's] home." Grandparents' attorney stated that his clients were in basic agreement with the GAL's report before Child's psychologist testified. Grandparents have not demonstrated that they carried their burden or attempted to carry their burden of showing the existence of extraordinary circumstances before the revocation of the kinship guardianship at the end of the December 6 hearing.

**E. Sufficiency of the Evidence**

Grandparents state in their brief that Mother failed to meet her burden of demonstrating that a change of circumstances occurred. "In accordance with the

18

standard of review, when considering a claim of insufficiency of the evidence, the appellate court resolves all disputes of facts in favor of the successful party and indulges all reasonable inferences in support of the prevailing party." *Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177 (filed 1996).

The kinship guardianship revocation statute states: "If the court finds that a preponderance of the evidence proves a *change in circumstances* and the revocation is in the best interests of the child, it shall grant the motion." Section 40-10B-12(B) (emphasis added). Grandparents assert that Mother's substance abuse counseling, sobriety, job retention, and adherence to the conditions of her probation were "not a material change of circumstances, since they were required as conditions of her state and federal probation" and were "known factors prior to the Order Appointing Kinship Guardianship." We disagree. The fact that Mother was maintaining sobriety may have been known and required at the time that a kinship guardianship occurred, but the very fact that the sobriety continued for a substantial amount of time is a change in circumstances. *See State ex rel. Dep't of Human Servs. v. Natural Mother*, 96 N.M. 677, 679, 634 P.2d 699, 701 (Ct. App. 1981) (holding that findings used to determine present parental rights must be based on current evidence, and showings of past conduct is irrelevant in a finding of current fitness).

**F.  Due Process**

In their docketing statement, Grandparents stated: "Grandparents are raising for the first time in appeal the issue of Constitutional rights of 'legal guardians' and a minor child to maintain their familial relationship." Due process claims will not be addressed when raised for the first time on appeal. *See State v. Nichols*, 2006-NMCA-017, ¶¶ 27-29, 139 N.M. 72, 128 P.3d 500 (filed 2005); *State v. Baldonado*, 1998-NMCA-040, ¶¶ 21-22, 124 N.M. 745, 955 P.2d 214. In their brief, Grandparents assert that as kinship guardian psychological parents, they have an equal standing with Mother in protected fundamental liberty interests towards Child. This claim, however, lacks development and authority that supports it, and we decline to reach it.

**III.  CONCLUSION**

Because of the reasoning stated above, we affirm the district court's revocation of the kinship guardianship. Child should have a loving home and not be relocated unless it is in Child's best interest. All parties appear to love Child very much. However, it is important for Child to have permanency and stability in his life.

**IT IS SO ORDERED.**

_____

20

**ROBERT E. ROBLES, Judge**

**WE CONCUR:**


_____
**MICHAEL D. BUSTAMANTE, Judge**


_____
**RODERICK T. KENNEDY, Judge**