This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-38531**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**RONNIE RUIZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Daniel E. Ramczyk, District Judge**

Hector H. Balderas, Attorney General
Van Snow, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Thomas J. Lewis, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**HANISEE, Chief Judge.**

**{1}**     Defendant Ronnie Ruiz appeals his conviction for first-degree criminal sexual penetration of a minor (CSPM). Determining that Defendant's right to a speedy trial was not violated and the district court did not otherwise err, we affirm.

**BACKGROUND**

**{2}**     When A.R., Defendant's step-niece, was thirteen years old and about to enter high school, she told hospital staff that Defendant sexually abused her when she was

seven years old while she and Defendant were staying at her grandmother's house. In February 2017, a grand jury indicted Defendant on one count of first-degree CSPM of a child under thirteen and two counts of second-degree criminal sexual contact of a minor. The State alleged that Defendant penetrated A.R.'s vagina and touched her genitals and buttocks sometime between August 23, 2006, and August 22, 2008. Trial was initially set for November 2017, however, multiple events led to delays—including withdrawal of Defendant's first and second counsel, a stay to determine Defendant's competency, and the disqualification of the Second Judicial District Attorney's Office. A specially assigned prosecutor ultimately obtained another indictment by a second grand jury, which added a second count of CSPM. In all, there was a twenty-eight-month delay between Defendant's original indictment and his trial.

**{3}** About a month before Defendant's June 2019 trial, Defendant moved to dismiss asserting that his right to a speedy trial was violated. The district court denied the motion, determining that most of the delay was attributable to Defendant. The day before trial, the State moved to amend the indictment by merging the charges into a single count of CSPM occurring between August 1, 2006, and July 31, 2007, which the district court granted. The jury found Defendant guilty of CSPM, and he appeals.

**DISCUSSION**

**{4}** Defendant asserts that the twenty-eight months that passed between his indictment and trial, which he spent in custody, violated his right to a speedy trial. Defendant also contends that the district court erred in allowing the State to amend the dates charged in the indictment, declining to review the presentation of certain testimony to the second grand jury, and failing to order a mistrial.

**I.      Defendant's Right to a Speedy Trial Was Not Violated**

**{5}** Defendant argues that he was deprived of his constitutional right to a speedy trial. To determine whether such is the case, we consider the United States Supreme Court's balancing test set forth in *Barker v. Wingo*, 407 U.S. 514 (1972). *State v. Smith*, 2016-NMSC-007, ¶ 58, 367 P.3d 420. "Under the *Barker* framework, courts weigh the conduct of both the prosecution and the defendant under the guidance of four factors: (1) the length of the delay; (2) the reasons for the delay; (3) the timeliness and manner in which the defendant asserted his speedy trial right; and (4) the particular prejudice that the defendant actually suffered." *Id.* (internal quotation marks and citation omitted). Our courts emphasize that "the heart of the right to a speedy trial is preventing prejudice to the accused." *State v. Serros*, 2016-NMSC-008, ¶ 4, 366 P.3d 1121 (alternation, internal quotation marks, and citation omitted). When "reviewing a district court's ruling on a speedy trial violation claim, we defer to the court's findings of fact, and we weigh and balance the *Barker* factors de novo." *Id.* ¶ 20.

**{6}** Here, the total length of delay was approximately twenty-eight months, spanning from Defendant's indictment by the first grand jury on February 28, 2017, to his trial beginning June 26, 2019. The district court initially assigned, and later reassigned, the

case to Track 2, determining it to be of intermediate complexity. Neither party challenges the district court's finding of intermediate complexity. We therefore initially conclude that the length of delay is presumptively prejudicial and weighs moderately to heavily in Defendant's favor. *See State v. Montoya*, 2015-NMCA-056, ¶ 15, 348 P.3d 1057 (weighing twenty-seven month delay in intermediately complex case moderately to heavily in the defendant's favor); *State v. Steinmetz*, 2014-NMCA-070, ¶ 6, 327 P.3d 1145 (weighing twenty-eight month delay in intermediately complex case moderately in the defendant's favor).

**{7}** We next consider the reasons for delay, and in doing so provide a brief summary of the relevant time periods of asserted delay. *See State v. Salazar*, 2018-NMCA-030, ¶ 22, 458 P.3d 485 ("*Barker* describes three types of delay: (1) a deliberate attempt to delay the trial in order to hamper the defense, which should be weighed heavily against the government; (2) negligent or administrative delay, which weighs less heavily but nevertheless weighs against the state, and (3) neutral delay, or delay justified by a valid reason, which does not weigh against either party." (alterations, internal quotation marks, and citation omitted)).

## February 28, 2017 to September 21, 2017

**{8}** Defendant was indicted by a grand jury on February 28, 2017, and the indictment was filed in district court the next day.[1] Trial was scheduled for November 2017. During this time period, both the State and Defendant filed numerous pleadings and discovery occurred. Because a trial was set and the case proceeded normally, this time period is only neutral delay that does not weigh against either party. *See State v. Brown*, 2017-NMCA-046, ¶ 19, 396 P.3d 171 (concluding the period in which the case was proceeding normally toward trial was "appropriate, neutral delay and [does] not weigh against either party").

## September 22, 2017 to February 6, 2018

**{9}** On September 22, 2017, Defendant's first counsel filed a motion to withdraw due to an unspecified conflict. On September 28, 2017, Defendant's second counsel moved to stay proceedings to determine Defendant's competency. The district court granted that motion and suspended the case on October 24, 2017. Defendant was determined to be competent on February 6, 2018, and the stay was lifted.

**{10}** This period of approximately five months of delay encompasses delay caused by the withdrawal of Defendant's first counsel, as well as a stay to determine Defendant's competency, and weighs neither in favor of nor against Defendant. *See Serros*, 2016-

---

[1]Defendant complains that he was not notified that he was a target of the grand jury. The alleged lack of notice Defendant complains about, however, could not have created a delay resulting in a speedy trial violation, as it occurred prior to his indictment by the first grand jury. *See State v. Flores*, 2015-NMCA-081, ¶ 5, 355 P.3d 81 ("We calculate the length of delay from the time the defendant becomes an accused, that is, by a filing of a formal indictment or information or arrest and holding to answer." (internal quotation marks and citation omitted)).

NMSC-008, ¶ 74 (explaining that delays caused by the defendant's reasonable attempts to replace his counsel will not be held against him); *see also State v. Stock*, 2006-NMCA-140, ¶¶ 19-22, 29, 140 N.M. 676, 147 P.3d 885 (explaining that generally, delays resulting from competency evaluations weigh against the defendant because they are for the "defendant's benefit," but declining to weigh "extraordinary periods of delay" against the defendant, resulting from both defense counsel's failure to provide an evaluation report to either the court or the state, and the state's "failure to monitor the case and ensure that steps were being taken to bring [the d]efendant to trial in a timely manner").

**February 7, 2018 to May 7, 2018**

**{11}** On February 21, 2018, Defendant moved to dismiss the grand jury indictment asserting that the State failed to provide him with a target notice. Although the State filed a response to this motion to dismiss, the record does not indicate that the district court ruled on the motion. On March 1, 2018, the district court determined the case to be of intermediate complexity, assigned the case to Track 2, and set trial for September 2018. Because a trial date was again set and Defendant did not pursue a ruling on his motion to dismiss, this period includes only neutral delay that does not weigh for or against either party. *See Brown*, 2017-NMCA-046, ¶ 19.

**May 8, 2018 to September 9, 2018**

**{12}** Another period of delay began on May 8, 2018, when the district court permitted Defendant's second counsel to withdraw after the Second Judicial District Attorney's Office inadvertently intercepted confidential communications between Defendant and his second defense counsel. The district court set a hearing on a motion to compel selection of Defendant's third counsel for May 30, 2018. On June 13, 2018, Defendant's third counsel moved to disqualify the Second Judicial District Attorney's Office, which the district court granted on September 7, 2018. Following the disqualification, a special prosecutor presented the case to a second grand jury on September 11, 2018, and Defendant was indicted on two counts of CSPM.

**{13}** This period of approximately four months of delay includes delay caused by the disqualification of the Second Judicial District Attorney's Office, as well as the withdrawal of Defendant's second counsel. In its order granting Defendant's motion to disqualify the Second Judicial District Attorney's Office, the district court explained that Defendant's communications with his second counsel were recorded "[u]nbeknownst" to the district attorney assigned to this case, who "unknowingly" received recordings of Defendant's privileged phone calls. The district court concluded that these events were not purposeful and did not violate any rules of professional conduct. Nothing in the record or the district court's order leads us to conclude that this incident was a deliberate attempt by the State to delay Defendant's trial. Therefore, we determine that this delay constitutes negligent or administrative delay and weighs slightly against the State. *See State v. Suskiewich*, 2016-NMCA-004, ¶ 9, 363 P.3d 1247 ("[N]egligent or

administrative delay weighs against the state, though not heavily." (alteration, internal quotation marks, and citation omitted)).

## September 10, 2018 to June 26, 2019

**{14}** On October 11, 2018, the district court again determined the case to be of intermediate complexity, assigning it to Track 2 and setting it for trial in June 2019. On March 12, 2019, the parties jointly moved to extend the pretrial deadlines, which the district court granted. Trial began on June 26, 2019. During the final time period of approximately nine months, we agree with the State that the case was proceeding normally. *See Brown*, 2017-NMCA-046, ¶ 19.

**{15}** Overall, considering the reasons for delay and the weight attributable to each party under *Barker*, we conclude that of the approximately twenty-eight months of delay, four months were attributable to the State and twenty-four months were attributable to neutral delay. Thus, Defendant has failed to demonstrate that the reasons for delay weigh heavily in his favor.

**{16}** In *State v. Garza*, our Supreme Court "abolished[ed] the presumption that a defendant's right to a speedy trial has been violated based solely on the threshold determination that the length of delay is presumptively prejudicial." 2009-NMSC-038, ¶ 1, 146 N.M. 499, 212 P.3d 387. (internal quotation marks omitted). "Instead, [the d]efendant must still show particularized prejudice cognizable under his constitutional right to a speedy trial and demonstrate that, on the whole, the *Barker* factors weigh in his favor." *Smith*, 2016-NMSC-007, ¶ 59. Here, Defendant neither demonstrates that the reasons for delay weigh in his favor, nor does he demonstrate particular prejudice caused by the asserted delays.

**{17}** Defendant argues that he was unduly prejudiced by his pretrial incarceration because he experienced, among other things, a breach of attorney client privilege, a new defense team, and the disqualification of the District Attorney's Office, which resulted in an increased "level of anxiety and oppression beyond that normally felt by inmates awaiting trial." Defendant did not submit an affidavit with his speedy trial motion, nor did he present any evidence at the hearing on his speedy trial motion. Instead, Defendant cites statements of counsel in various motions made during the pendency of this case. *See State v. Pacheco*, 2017-NMCA-014, ¶ 8, 388 P.3d 307 ("[S]tatements of counsel are not evidence." (internal quotation marks and citation omitted)). Additionally, Defendant concedes that he "cannot point to a specific impairment to his defense." Consequently, we conclude Defendant has not met his burden to demonstrate undue pretrial incarceration or anxiety. *See State v. Parrish*, 2011-NMCA-033, ¶ 32, 149 N.M. 506, 252 P.3d 730 ("Defendant bears the burden of demonstrating and substantiating prejudice."); *see also Garza*, 2009-NMSC-038, ¶ 35 ("[W]e weigh this factor in the defendant's favor only where the pretrial incarceration or the anxiety suffered is undue.").

**{18}** Because we conclude that the reasons for delay do not weigh heavily in Defendant's favor and he fails to demonstrate particularized prejudice, we hold that Defendant's right to a speedy trial was not violated. *See Garza*, 2009-NMSC-038, ¶ 39 ("[U]nless the first three *Barker* factors all weigh heavily against the government, the defendant[] must demonstrate actual prejudice." (internal quotation marks and citation omitted)); *see also Smith*, 2016-NMSC-007, ¶ 60 ("[T]he prejudice factor weighs heavily against [the d]efendant and is outcome determinative.").

## II. The District Court Did Not Err in Allowing the State to Amend the Indictment

**{19}** Defendant contends that the district court erred in allowing the State to amend the dates charged in the indictment because the amendment prejudiced Defendant's defense. Specifically, Defendant argues that because he anticipated that "the State would fail to prove either count [of CSPM] beyond a reasonable doubt because A.R. could not recall whether the incident had occurred before she started first or second grade," the amendment to "the indictment took away the defense's opportunity to demonstrate that the State could not meet its burden of proof." The State answers that amending the indictment did not prejudice Defendant because its theory of the case— that Defendant "touched and digitally penetrated A.R.'s vagina on one occasion between August 2006 and August 2008"—remained consistent throughout the proceedings.

**{20}** Under Rule 5-204(C) NMRA, the district court "may at any time allow the indictment or information to be amended in respect to any variance to conform to the evidence." However, "[i]f the court finds that the defendant has been prejudiced by an amendment, the court may postpone the trial or grant other relief as may be proper under the circumstances." *Id.* "We review a district court's interpretation and application of Rule 5-204 de novo." *See State v. Stevens*, 2014-NMSC-011, ¶ 49, 323 P.3d 901. (internal quotation marks and citation omitted).

**{21}** "A criminal indictment or information need not contain exacting detail as long as the defendant is given sufficient notice of the charges." *Id.* ¶ 50. Prejudice exists when the defendant is unable to reasonably anticipate from the indictment the nature of the proof that the state will produce at trial. *State v. Marquez*, 1998-NMCA-010, ¶ 20, 124 N.M. 409, 951 P.2d 1070. To warrant reversal of a conviction, "the defendant must demonstrate actual prejudice; the mere assertion of prejudice alone is insufficient to establish error warranting reversal." *State v. Romero*, 2013-NMCA-101, ¶ 9, 311 P.3d 1205. We have further acknowledged the importance of balancing a defendant's due process right to reasonable notice of the charges and the challenge faced by the state in prosecuting criminal sexual charges against children who often have a difficult time remembering precise dates of crimes that may have been committed against them. *See generally State v. Baldonado*, 1998-NMCA-040, ¶¶ 20-21, 124 N.M. 745, 955 P.2d 214 (noting that "it is not difficult to appreciate that young children cannot be held to an adult's ability to comprehend and recall dates and other specifics" and "[t]he predictable

limitations of young witnesses should not be turned into a reason to prevent prosecution of their abusers" (alteration, internal quotation marks, and citation omitted)).

**{22}**    Here, upon review of the record—including the amended indictment—we determine that Defendant fails to demonstrate actual prejudice as a result of the amended indictment. Although Defendant contends that the amendment made him unable to demonstrate that the State could not prove beyond a reasonable doubt when the conduct in question occurred, Defendant cross-examined A.R. about the inconsistency of her reference to dates and asserted that A.R. was telling a lie, and argued that the jury could not determine when the charged conduct occurred. Moreover, upon allowing the State to amend the indictment, the district court offered Defendant a continuance to revise his defense. Although Defendant argues that moving for a continuance would have compromised his speedy trial argument, Defendant cites no authority suggesting such a result renders the district court's grant of the amendment erroneous. *See Marquez*, 1998-NMCA-010, ¶ 21 ("The remedy afforded for prejudice by an amendment is to postpone the trial or grant such other relief as may be proper under the circumstances." (internal quotation marks and citation omitted)); *see also Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."). Because Defendant fails to demonstrate actual prejudice related to the amendment of the indictment, we conclude that the district court did not err in allowing the State to amend the indictment.

### III.    Defendant's Remaining Claims of Error Provide No Basis for Reversal

**{23}**    Defendant raises several other points of error. Specifically, Defendant contends that the district court erred in declining to review testimony presented to the second grand jury and erred in denying his motion for a mistrial. To the extent these claims of error are preserved and properly before this Court, after consideration of the briefing, the record, and relevant law, we determine them to be without merit and provide no basis for reversal. We, therefore, decline to address them further.

### CONCLUSION

**{24}**    Because we determine that Defendant's right to a speedy trial was not violated and that the district court did not otherwise err, we affirm.

**{25}    IT IS SO ORDERED.**

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**JANE B. YOHALEM, Judge**