2002-NMCA-012

41 P.3d 908

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Michael ERVIN, Defendant–Appellant.**

No. 21,415.

Court of Appeals of New Mexico.

Dec. 1, 2001.

Certiorari Denied, No. 27,282,
Jan. 28, 2002.

Patricia A. Madrid, Attorney General, William McEuen, Ass't Attorney General, Santa Fe, NM, for Appellee.

M. David Chacon, II, Albuquerque, NM, for Appellant.

*OPINION*

PICKARD, Judge.

{1} Defendant appeals his convictions for criminal sexual penetration of a child under thirteen, kidnapping, false imprisonment, and bribery of a witness. On appeal, Defendant argues that the trial court erred in denying Defendant's motion for a statement of facts and in limiting the scope of defense counsel's cross-examination of the victim. Defendant also claims his counsel were ineffective. We affirm the convictions.

**FACTS AND PROCEEDINGS**

{2} In November 1996, the child (Victim), then eleven years old, told his legal guardian (Guardian) that Defendant had sexually molested him, and Guardian reported the abuse to the Bernalillo County Sheriff's Department. The initial indictment, filed on November 20, 1997, alleged that the acts had occurred between May 1, 1992, and August 30, 1993, a sixteen-month time frame. Defendant filed a motion for a statement of facts, asking the trial court for an order requiring the State to narrow the charging time frame in the indictment so that Defendant could raise an alibi defense. After a hearing, the trial court held the motion in abeyance to see if additional discovery would narrow the time frame. Three weeks before trial, after additional discovery efforts, including an interview with Victim, Defendant renewed his motion, indicating that those efforts had not helped to narrow the time frame of the charges. The trial court held a hearing on the renewed motion on the first day of the trial, April 5, 1999, after the two sides had already taken Victim's videotaped testimony. The State asserted that it could not get more specific dates from its witnesses. The trial court denied Defendant's motion.

{3} In his videotaped testimony, Victim testified that the abuse occurred while both he and Defendant were living at Guardian's house. He could not remember what year the abuse occurred or how old he was at the time. During the trial, both Guardian and Victim's biological mother (Mother) testified that Defendant lived in the house sometime during the summer of 1993.

**DISCUSSION**

*Due Process*

{4} Defendant's central argument is that the sixteen-month charging period in his indictment was so overly broad as to deprive him of his due process right to reasonable notice of the charges against him. *See* U.S. Const. amend. XIV, § 1; N.M. Const., art. II, § 14. Defendant relies on *State v. Baldonado*, in which we held that lengthy charging periods must be carefully scrutinized to ensure that a defendant's due process rights are protected. *See State v. Baldonado*, 1998–NMCA–040, ¶ 21, 124 N.M. 745, 955 P.2d 214. Defendant asserts that if the State had narrowed the charging time frame, he could have raised an alibi defense for some of the charges against him.

{5} In *Baldonado*, the defendant was charged with criminal sexual contact of a minor under thirteen. *Id.* ¶ 3. The indictment alleged that the crimes could have occurred anytime within a two-year period. *Id.* ¶ 4. The defendant sought an order requiring the State to narrow the time frame so he could assert an alibi defense. *Id.* The State argued that it was not required to provide more specific information as to the time frame. *Id.* ¶ 9. The trial court denied the defendant's motion, and the defendant was eventually convicted of the charges. The defendant appealed, arguing that the two-year charging period violated his due process rights.

{6} While we agreed that the trial court had failed to give sufficient consideration to the defendant's due process rights, we declined to hold that the two-year time frame was unconstitutional as a matter of law. *Id.* ¶ 23. Instead, we set out a two-part test to analyze the constitutionality of lengthy charging periods: (1) whether the State could reasonably have provided greater specificity of the times of the alleged offenses and (2) if so, whether the State's failure to do so prejudiced the defendant. *See id.* ¶ 29. We provided a list of nine nonexclusive factors to be used in applying this test:

1. The age and intelligence of the victim and other witnesses, and their ability to particularize the date and time of the alleged offense;

2. The surrounding circumstances; including whether a continuing course of conduct is alleged, as opposed to a relatively few, discrete or isolated events;

3. The extent to which defendant had frequent, unsupervised access to the victim;

4. The nature of the offense, including whether it is likely to occur at a specific time or is likely to have been discovered immediately;

5. The length of the alleged period of time in relation to the number of individual criminal acts alleged;

6. The length of time asserted in the indictment;

7. The passage of time between the period alleged for the crime and the time the abuse was asserted and/or the time defendant was arrested and/or indicted;

8. The extent and thoroughness of the State's efforts to narrow the time frame; and

9. Whether the defendant can assert a plausible alibi defense.

*Id.* ¶ 27.

{7} As we stated in *Baldonado*, there is no set length of time that will automatically necessitate a due process review. *See id.* ¶¶ 23, 26. Nonetheless, we stressed that trial courts must be diligent in protecting the due process rights of defendants in cases where the indictment is not specific as to the dates of the charged crimes. *Id.* ¶¶ 21, 28. In this case, the sixteen-month charging peri-

od was long enough to alert the trial court to the need to conduct a thorough analysis in order to ensure that Defendant had sufficient notice of the charges against him. The trial court, however, did not engage in a thorough analysis of Defendant's constitutional claims.

{8} First, the trial court did not examine the "extent and thoroughness of the State's efforts," as is required under *Baldonado*. *Id.* ¶ 27. During the first hearing on the matter, the trial court postponed making a ruling while the parties continued discovery. When discovery was completed, defense counsel informed the trial court that discovery had not served to narrow the charging time frame. The trial court did not hold another hearing on the issue until the first day of trial, after the victim's testimony was already complete, when it was realistically too late to require the State to conduct further investigation without a significant interruption in the proceedings. During that hearing, the trial court accepted the State's assertion without any inquiry into what efforts the State had made up to that point.

{9} Perhaps more importantly, the trial court did not evaluate the potential prejudice to Defendant. As we explained in *Baldonado*, if the State's failure to narrow the time frame prejudiced Defendant, then the charges must be dismissed, unless the State can respond with a statement of facts that provides Defendant with proper notice of the charges against him. *Id.* ¶ 34. The trial court should have more thoroughly evaluated the impact on Defendant's due process rights before allowing the State to move forward with a sixteen-month charging period.

{10} When we derived this two-part test in *Baldonado*, we did not apply it to that particular case, instead remanding to the trial court to more fully develop the factual record in order to analyze the factors we identified. Here, we believe that the record is sufficiently developed that we can apply the test to determine whether the charges in this case must be dismissed. Before we do so, however, we will address Defendant's suggestion that we reject *Baldonado*'s multi-factor approach in favor of a presumption that extended charging periods violate due process.

{11} *Baldonado,* the defense argues, relaxed the State's burden of proof in child sexual abuse cases. We disagree. As we observed in *Baldonado,* time is not an element of most offenses, and thus the State usually need not prove the date on which a crime occurred beyond a reasonable doubt. *Id.* ¶ 29. By adopting a case-by-case approach, we sought to provide safeguards for the due process rights of defendants without allowing the "predictable limitations of young witnesses ... to prevent prosecution of their abusers." *Id.* ¶ 20. We rejected the even more restrictive approach of several jurisdictions that have refused to hold that extended charging periods raise due process concerns. *See, e.g., Dilbeck v. State,* 594 So.2d 168, 174 (Ala.Crim.App.1991); *State v. Martinez,* 250 Neb. 597, 550 N.W.2d 655, 657 (1996). We see no reason to abandon the careful balancing required by the *Baldonado* case at this time.

{12} Defendant also reads *Baldonado* as mandating an express analysis of all of the nine factors listed above. In fact, the case set out a two-part test to determine whether a charging period is overly broad. *Id.* ¶¶ 2, 29. The nine factors enumerated in the case "relate to both whether the indictment is reasonably particular and whether the defendant suffered prejudice." *Id.* ¶ 29. We expressly recognized that " 'the weight to be accorded the factors will vary according to the circumstances of the case.' " *Id.* ¶ 28 (quoting *In re K.A.W.,* 104 N.J. 112, 515 A.2d 1217, 1222 (1986)). We now apply that two-part test to the case at hand.

*Reasonable Particularity*

{13} Under *Baldonado,* the State is obligated to make reasonable efforts to narrow the charging time frame. *Id.* ¶ 25. *Cf. State v. Ware,* 118 N.M. 319, 323, 881 P.2d 679, 683 (1994) ("[T]he State generally has no duty to collect particular evidence."). The State argues that it could not have narrowed the charging time frame further because Victim was unable to pinpoint the dates on which the abuse occurred. The State also relies on expert testimony indicating that most children have difficulty sequencing events in time, and that children who experience trauma have even greater difficulty. The State, however, has not met its burden

to establish that it could not have provided greater specificity of the times of the alleged offenses. To the contrary, the record shows that the State could have substantially narrowed the time frame before trial with relatively little effort.

{14} The difficulty in pinpointing a more precise time frame in this case arose because Victim not only had trouble remembering when the events in question occurred, but at times gave conflicting information about the relevant time frame. The State based the sixteen-month charging period of May 1992 to August 1993 on statements Victim made during an initial interview at a "safehouse," a site where trained counselors conduct interviews of youth who claim to be victims of sexual abuse. In that interview, Victim stated that he was less than six years old when the abuse occurred. In his pretrial interview with defense counsel, Victim said he was three or four at the time, which would have put the dates of the abuse well before the charging period. Victim testified at trial that the abuse occurred while Defendant was living at Guardian's house, and that it occurred when he was approximately eight years old.

{15} Testimony at trial revealed that Defendant lived at Guardian's house during the summer of 1993. Guardian testified that Defendant had stayed overnight occasionally before the summer of 1993, that he lived there sometime during that summer, and that he never returned after September 1993. Mother, who was also living in the house at that time, also estimated that Defendant was living there "from May through August or September of '93." Guardian also testified that Defendant reported allegations of neglect to the Bernalillo County Sheriff's Department and the Division of Family Services just a few weeks after leaving the house. Investigator Lucinda Ward testified that she visited Guardian's house on September 17, 1993, in response to those allegations. Ms. Ward also testified that Guardian told her that Defendant lived at the house for approximately two weeks during that summer.

{16} Each of these witnesses was called to testify by the State, not Defendant, and the State had access to these witnesses throughout the pretrial period. In short, the State

was either already aware of, or could have easily become apprised of, facts that would reduce the time frame from sixteen months to four. It is not clear why the State insisted on maintaining the sixteen-month time frame in the indictment, and later in the jury instructions, when it had such information available. Indeed, in its opening statements, the prosecutor emphasized several of the facts that showed Defendant was living at Guardian's house during the summer of 1993. These statements were made just shortly after the hearing on Defendant's renewed motion for a statement of facts, when the State continued to maintain that it could not obtain more specific information from its witnesses. Whatever the State's motivation for maintaining the sixteen-month charging period, the State did not fulfill its duty to provide adequate specification of the times of the alleged offenses.

### Prejudice to Defendant

{17} Having held that the indictment was not stated with reasonable particularity, we must now determine whether the State's failure caused prejudice to Defendant. If Defendant will be prejudiced by the indictment's broad time frame, the charges must be dismissed, even when the State has done all it could to narrow the time frame. *Baldonado*, 1998–NMCA–040, ¶¶ 32, 34, 124 N.M. 745, 955 P.2d 214. On the other hand, without prejudice, there is no reversible error. *Id.* ¶ 29. Prejudice must be both actual, not based on pure conjecture, and substantial in its impact on the defense. *State v. Padilla*, 1998–NMCA–088, ¶ 14, 125 N.M. 665, 964 P.2d 829. Prejudice is shown when the defense loses its only means of proving its case. *See State v. Riggs*, 114 N.M. 358, 361, 838 P.2d 975, 978 (1992). "Denial of a likely defense cannot be anything other than prejudicial." *March v. State*, 105 N.M. 453, 456, 734 P.2d 231, 234 (1987).

{18} Defendant claims he was prejudiced because he was unable to raise an alibi defense without more specific information as to when the charged incidents occurred. During trial, defense counsel indicated that he could make an offer of proof of testimony from the records custodian from the Veteran's Administration Hospital, where Defendant underwent treatment for alcohol dependence. Defense counsel never actually made the offer of proof, and thus the dates of Defendant's hospitalization are not part of the record before us. After reviewing the record, we are not persuaded that Defendant could have raised a viable alibi defense if the charging time frame had been narrowed to four months.

{19} Alibi evidence would have only been helpful to Defendant if it contradicted the State's evidence that Defendant was living at Guardian's house during the summer of 1993. Defendant, however, does not claim that he was not living at Guardian's house during that time. In fact, Defendant now argues that the State should have used this evidence to narrow the time frame of the charges. In addition, although the State should have clarified the time frame prior to trial, Defendant had sufficient opportunity at trial to present a viable alibi defense. Guardian's and Mother's testimony regarding the relevant time frame was presented in the State's case-in-chief. Defendant had gathered the V.A. records prior to trial and could have introduced that evidence if it served to rebut their testimony. Had the V.A. records established that Defendant was never at Guardian's house during that summer, we have no doubt that Defendant would have introduced that evidence at trial. In fact, Defendant's notice of alibi claimed that he was at the V.A. Hospital only until May of 1993 and that he lived with his sister from May to July 1993. He admitted in closing argument that he was "up there [at Guardian's house] for a four-to-six week period of time."

{20} The V.A. records might have been helpful to the defense if the State had been able to narrow the time frame even further or to provide specific dates on which the assaults occurred. The State, however, was not required to do so because it could not do so. Although we again stress that there is no set amount of time frame that as a matter of law is reasonable, we think that a four-month charging time frame would have provided Defendant with sufficient notice of the charges against him to meet due process requirements. In *Baldonado*, we sought to balance the due process rights of defendants against the reality that " '[y]oung children

cannot be held to an adult's ability to comprehend and recall dates and other specifics.' " *Baldonado*, 1998–NMCA–040, ¶ 20, 124 N.M. 745, 955 P.2d 214 (quoting *State v. Fawcett*, 145 Wis.2d 244, 426 N.W.2d 91, 94 (App.1988)). In his testimony, Victim described three separate incidents of abuse. He testified that some time lapsed between each separate incident. He did not report the abuse for approximately three years, and his testimony at trial came approximately three years after that. Given that Victim alleged a continuing course of abuse throughout the time Defendant lived in the house with the family, a four-month time frame was narrow enough to provide Defendant with notice as to when the events in question occurred.

{21} Because Defendant was not prejudiced by the State's failure to narrow the charging time frame from sixteen months to four, and because a four-month charging time frame would have met the requirements of due process, we find no reason to remand this case for further proceedings on this issue.

*Ineffective Assistance of Counsel*

{22} Defendant argues that his trial counsel were ineffective for two reasons. First, Defendant argues that his counsel should have been more diligent in pursuing the *Baldonado* issue. He asserts that counsel should have more strongly urged the trial court to analyze each of the nine factors listed in *Baldonado*. He also argues that his counsel should have objected to the sentencing requirement that Defendant register as a sex offender. He argues that, because his offenses were committed in 1993, prior to the legislature's enactment of the state's sex offender registry laws, the requirement that he register as a sex offender amounts to ex post facto punishment. Neither of Defendant's contentions have merit.

{23} To succeed on a claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel did not exercise the skill of a reasonably competent attorney and (2) that the incompetent representation prejudiced the defendant's case. *State v. Baca*, 1997–NMSC–045, ¶ 20, 124 N.M. 55, 946 P.2d 1066. The main question is whether the allegedly incompetent repre-

sentation prejudiced the case such that but for counsel's error, there is a reasonable probability that the result of the proceedings would have been different. *Id.*

{24} We have already said that Defendant was not prejudiced by the sixteen-month charging period. Thus, Defendant was not prejudiced by defense counsel's inability to convince the trial court to engage in a more exacting analysis under *Baldonado*. In addition, we note that failure to obtain a favorable ruling does not make counsel ineffective, particularly when, as here, counsel made reasonable efforts to bring an issue to the trial court's attention. *See State v. Martinez*, 1996–NMCA–109, ¶ 27, 122 N.M. 476, 927 P.2d 31 ("Failure to renew at trial a motion ... [that] has been denied in limine does not constitute ineffective assistance of counsel."). Counsel for Defendant filed two separate motions asking the trial court to apply *Baldonado*, and requested hearings on each motion. They indicated that they could make an offer of proof regarding Defendant's alibi evidence. But the proof obviously did not extend to the entire four-month period. Their efforts should not be deemed deficient simply because the trial court was not persuaded or because the four-month period was not sufficiently narrow to mount an alibi defense.

{25} We similarly reject Defendant's argument that defense counsel were ineffective because they failed to object when the trial court ordered Defendant to register as a sex offender in accordance with NMSA 1978, § 29–11A–4 (2000). According to Defendant, defense counsel should have argued that the registration requirement violated the prohibition on ex post facto punishment. *See* U.S. Const., art. I, § 10; N.M. Const., art. II, § 19. Defendant also invites this Court to go beyond his ineffective assistance of counsel claim and analyze the constitutionality of the registration requirement, even though the issue was not raised below and neither party has fully briefed the issue. We express no opinion as to the merits of this argument at this time, because Defendant can still raise this issue before the trial court under Rule 5–801(B) NMRA 2001, which allows a defendant to file for a sentence reduction within

ninety days after the trial court receives a mandate from an appellate court. As a result, Defendant's ineffective assistance of counsel claim fails, because Defendant was not prejudiced by counsel's failure to raise the issue when the sentence was first imposed. In addition, there is no need for us to invoke any exceptions to the preservation requirement, *see* Rule 12–216(B) NMRA 2001, when the issue can still be raised below.

*Restriction on the Cross Examination of the Victim*

{26} As a final matter, Defendant asserts that the trial court erred in limiting Defendant's ability to attack Victim's credibility during cross-examination. Specifically, defense counsel wanted to ask Victim about the fact that he was banned from a Wal–Mart for shoplifting and that he lied about his grades during an interview regarding the sexual abuse. The trial judge excluded this particular evidence, indicating a lack of a factual basis regarding the Wal–Mart incident and characterizing the grades as exaggeration. Defendant concedes that the trial court, under Rule 11–608(B) NMRA 2001, has discretion to determine whether the probative value of evidence regarding a witness's prior instances of misconduct is outweighed by its prejudicial impact and that the trial court's ruling is reviewed for abuse of discretion only. *See State v. Apodaca*, 118 N.M. 762, 773, 887 P.2d 756, 765 (1994). Nonetheless, he argues that the trial court abused its discretion because the ruling deprived him of his ability to test the credibility of the witness. We disagree.

{27} Defense counsel was able to cross-examine Victim at length about other allegations he made against Defendant that Victim later admitted were false. In addition, despite the trial court's ruling, Guardian testified that Victim had stolen items from her, from her friends, and from stores. With this evidence before the jury, the probative value of Victim's lies about his grades would have been minimal, and certainly outweighed by the potential prejudice. The trial court did not abuse its discretion in limiting Defendant's cross-examination.

## CONCLUSION

{28} We hold that Defendant suffered no prejudice as a result of the State's failure to narrow the charging time frame from sixteen months to four, and Defendant's due process rights were not violated. In addition, we hold that defense counsel were effective, and the trial court was within its discretion in prohibiting cross-examination regarding the victim's prior acts of lying and stealing. Therefore, we affirm Defendant's convictions.

{29} **IT IS SO ORDERED.**

WE CONCUR: CYNTHIA A. FRY, Judge, and IRA ROBINSON, Judge.