# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                        **NO. 27,999**

**JESSE TRUJILLO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Denise Barela Shepherd, District Judge**

Gary K. King, Attorney General
Anita Carlson, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Santa Fe, NM

Vicki W. Zelle, Assistant Appellate Defender
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**FRY, Chief Judge.**

Defendant Jesse Trujillo appeals his conviction for battery against a household member. He contends that the trial court improperly prevented him from cross-examining Victim about her history of mental health issues, that it erroneously

excluded a letter allegedly sent to him by Victim, and that it denied him a fair trial based on the doctrine of cumulative error. For the reasons that follow, we affirm.

**BACKGROUND**

Defendant's conviction stems from an incident that occurred on April 23, 2006, in the residence shared by Defendant and Victim. A verbal argument escalated into a physical altercation. Victim testified that Defendant angrily pushed and struck her several times before she called 911. The police and paramedics arrived very shortly thereafter, and Victim was taken to the hospital in an ambulance due to severe back pain that she was experiencing.

Defendant was charged, and the matter proceeded to a jury trial in metro court. Three evidentiary issues arose, which are the subject of this appeal.

First, the State filed a motion in limine seeking to exclude any testimony about mental disorders with which Victim had allegedly been diagnosed. Because Defendant had neither medical records nor an expert witness and because the evidence lacked relevance, the prosecutor argued for exclusion of any evidence regarding either Victim's diagnoses or their possible effects. Defendant responded that Victim should be permitted to testify about her own mental state. The prosecutor replied that testimony about a witness's then-existing mental state is different from testimony about a witness's mental illnesses. The trial court ultimately ruled in the State's favor,

holding that it would not permit questioning about any diagnoses without an expert to lay a foundation as to the effect that the diagnoses might have had on Victim's perception at the time of the underlying events or at the time of trial. The court further noted that even if such evidence was relevant, its prejudicial effect would outweigh any probative value.

Second, in the course of cross-examination, the defense inquired whether Victim had sent a letter of apology to Defendant. Victim denied doing so. On re-direct, she reiterated her denial, indicated that she did not recognize the letter to which defense counsel had referred or the handwriting, and offered that the envelope was similar to an envelope that Defendant had used to send a letter to her while he was incarcerated. Subsequently, Defendant testified that he had received a letter from Victim in which she apologized for hitting him. The prosecutor objected. The defense asserted that the letter should be admitted as evidence that Victim sought contact with Defendant after the underlying incident, that Victim apologized, and as evidence of Victim's state of mind, specifically to demonstrate lack of fear. The court ultimately excluded the letter.

Third, on cross-examination, Victim acknowledged that she had previously stated that Defendant had been following her in late June or early July. Later, Defendant testified that he could not possibly have been following Victim as she had

indicated because he was incarcerated at the time. Although Defendant sought to further establish that he had been incarcerated on the underlying charges, the district court prohibited him from testifying as to why he was in custody.

The jury ultimately returned a guilty verdict on the charge of battery against a household member. Defendant initially appealed to the district court, which affirmed. He now seeks further review of the foregoing evidentiary issues.

**DISCUSSION**

**Victim's Alleged Mental Disorders**

Upon the State's motion, the trial court prohibited any inquiry into Victim's alleged mental disorders. Defendant argues that the trial court's ruling was in error and violated his constitutional right to confrontation.

We have reviewed the transcripts with care and find no indication that Defendant ever invoked his constitutional rights generally, or his Sixth Amendment or Confrontation Clause rights specifically. Although the parties and the trial court discussed the admissibility of the disputed medical evidence at length, the debate concerned the applicability of various rules of evidence. General requests for evidentiary rulings and for clarification on the scope of cross-examination are insufficient to preserve claims of constitutional error. *See State v. Silva*, 2008-NMSC-051, ¶ 10, 144 N.M. 815, 192 P.3d 1192 (holding that "a request for

clarification on the scope of cross-examination" was insufficient to preserve a Confrontation Clause argument, where counsel "did not argue that refusing the opportunity to ask questions . . . would violate [the d]efendant's constitutional rights generally, nor did counsel take the more desirable approach and argue specifically that [the d]efendant's Sixth Amendment or Confrontation Clause rights would be infringed"); *State v. Lucero*, 104 N.M. 587, 591, 725 P.2d 266, 270 (Ct. App. 1986) (concluding that the confrontation issue was not preserved because the defendant's objection asked merely for an evidentiary ruling and did not alert the trial court to a constitutional error). Thus, we confine our review to the claim of evidentiary error.

Generally, a trial court's decision to admit or exclude evidence is reviewed for abuse of discretion. *State v. Elinski*, 1997-NMCA-117, ¶ 8, 124 N.M. 261, 948 P.2d 1209. "An abuse of discretion arises when the evidentiary ruling is clearly contrary to logic and the facts and circumstances of the case." *State v. Armendariz*, 2006-NMSC-036, ¶ 6, 140 N.M. 182, 141 P.3d 526.

As previously stated, Defendant sought to question Victim about mental disorders with which she may have been diagnosed and the potential impact of such disorders on her perceptions. Defendant contends that these matters bore upon her credibility, *see generally State v. Taylor*, 103 N.M. 189, 194-95, 704 P.2d 443, 448-49 (Ct. App. 1985) (observing that questions regarding a witness's ability to perceive and

remember relate to credibility), which was a key issue, and consequently, the line of inquiry should have been permitted. Although we agree that credibility was a critical issue below, it nevertheless remained incumbent upon the defense to comply with the Rules of Evidence.

A variety of evidentiary concerns were raised below. The rules governing relevance, scientific, technical, or specialized knowledge, and unfair prejudice were all debated. For the reasons that follow, we conclude that these concerns provide ample support for the court's ruling.

In his briefs on appeal, Defendant contends that Victim was competent to testify about her own mental condition as it existed at the time of the incident, including any mental disorders with which she had been diagnosed, on the theory that she was aware of the symptoms she experienced, the treatment she received, and the overall effects of her mental illnesses. Defendant cites Rule 11-602 NMRA, as well as *Russell v. Russell*, 101 N.M. 648, 687 P.2d 83 (1984), in support of his contention that Victim could have been questioned about her mental diagnoses. We are unpersuaded.

Rule 11-602 provides that witnesses may not testify to matters which are outside the realm of their personal knowledge. Because this rule accommodates testimony about witnesses' personal experiences and perceptions, the trial court held that Victim could be questioned about her perceptions, feelings, emotions, motives,

and the like. However, the defense clearly sought to move beyond this area of inquiry into the realm of specific medical diagnoses as well as the potential impact of Victim's alleged mental disorders on her ability to accurately perceive events. The record contains nothing to suggest that this sort of specialized medical information was within Victim's personal knowledge.

Nor does *Russell* suggest a different result. In that case, the witness's past medical problems, including toxic shock syndrome, respiratory failure, cardiac arrest, and two recent hospitalizations, were established by documentary evidence, but she was allowed to testify as to the current state of her health. 101 N.M. at 649, 687 P.2d at 84. The court held that the witness "had the ability to describe the present pain she was experiencing and her difficulty in breathing." *Id.* We are unpersuaded that admission of the witness's testimony in *Russell* as to her physical condition at the time of the trial can be analogized to the present case, in which Defendant sought to cross-examine Victim as to any diagnoses of mental illnesses and the potential impact of such diagnosed conditions upon her at the time of the underlying incident. While *Russell* illustrates that testimony as to subjective perceptions of the current state of one's physical health, such as difficulty in breathing and pain, may not require expert testimony, diagnoses of mental disorders and the potential impact of such conditions present distinct concerns.

7

The trial court concluded that any evidence concerning mental disorders with which Victim may have been diagnosed as well as the effect of such disorders on Victim's perceptions would have fallen within the realm of scientific, technical, or specialized knowledge. Consequently, Defendant could not develop evidence of that nature through cross-examination of Victim, a lay witness. *See generally* Rule 11-701(C) NMRA (providing that lay witnesses cannot testify to opinions or inferences "based on scientific, technical or other specialized knowledge"). Rather, expert testimony would have been required.

Defendant takes issue with the trial court's view, contending that the impact of mental illness on a witness's ability to accurately perceive events is "immediately evident," "clear," "commonly known," or "commonly understood," such that expert testimony should not have been required. We disagree. Generally speaking, the causes and effects of medical conditions fall within the realm of expert testimony. *See Woods v. Brumlop*, 71 N.M. 221, 225, 377 P.2d 520, 523 (1962) (holding that only a medical expert is competent to testify as to the cause and effect of a medical condition). The need for specialized knowledge seems especially acute where, as here, mental disorders are at issue. Contrary to Defendant's suggestion, the effects of the various mental disorders with which Victim was allegedly diagnosed cannot be regarded as common knowledge.

In the absence of any expert testimony explaining how the diagnosed conditions could have impacted Victim's ability to perceive events, the probative value of the disputed evidence becomes negligible. *Cf. State v. Meadors*, 121 N.M. 38, 48, 908 P.2d 731, 741 (1995) (observing that evidence of a witness's medical condition was of minimal probative value where the defense failed to demonstrate how cross-examination on this subject would have undermined the witness's credibility). By contrast, evidence of Victim's numerous mental disorders would clearly have had a highly prejudicial impact, as the trial court observed below. Although Defendant contends that the trial court should not have taken this into consideration, we perceive no error. To the contrary, we conclude that the trial court acted well within its discretion in concluding that the minimal probative value of the evidence in question was substantially outweighed by the danger of unfair prejudice, such that the evidence was properly excluded pursuant to Rule 11-403 NMRA. *Cf. Meadors*, 121 N.M. at 48, 908 P.2d at 741 (arriving at a similar conclusion upon balancing negligible probative value against unfair prejudice).

Defendant also contends that the trial court erred in precluding him from asking Victim whether she had ever intentionally injured herself. The trial court allowed Defendant to ask Victim if she had caused her own injuries in this case. Similarly, the trial court permitted Defendant to testify that Victim had intentionally injured herself

9

in the past. However, the court precluded any inquiry into specific instances of self-harm by Victim in the past.

We conclude that under Rule 11-608(B) NMRA, the trial court properly excluded evidence of previous instances in which Victim might have injured herself because such questioning would have been directed to specific instances of prior conduct that do not concern character for truthfulness. *See generally State v. Scott*, 113 N.M. 525, 530, 828 P.2d 958, 963 (Ct. App. 1991) (noting that under Rule 11-608(B), a defendant may cross examine a witness about specific instances of conduct if that conduct is probative of untruthfulness, and the trial court has discretion to determine whether the prior conduct is probative of untruthfulness). Because prior acts of self-harm by Victim would not have been probative of her truthfulness, inquiry into such acts would have been specifically foreclosed by Rule 11-608(B).

In summary, we uphold the trial court's decision to prohibit Defendant from questioning Victim about any prior mental health diagnoses and instances of self-destructive behavior.

**The Letter**

Defendant argues that the trial court erred in excluding a letter of apology allegedly sent by Victim to Defendant after the altercation that led to the criminal charges. Defendant frames this as both a Confrontation Clause issue and as a general evidentiary error. However, because we find no indication that Defendant ever mentioned the Confrontation Clause or otherwise alerted the trial court that its ruling violated his right to confront the witnesses, we conclude that Defendant failed to preserve his Confrontation Clause claim. *See Silva*, 2008-NMSC-051, ¶ 10; *Lucero*, 104 N.M. at 591, 725 P.2d at 270. We therefore review the trial court's ruling for abuse of discretion. *See Elinski*, 1997-NMCA-117, ¶ 8.

The defense offered the letter of apology "to prove that [Defendant] could have received some kind of contact from [Victim]." When the trial court inquired about relevance, Defendant argued that the letter showed Victim's state of mind—specifically, lack of fear.

To the extent that the letter was offered to prove that Victim contacted Defendant, Rule 11-608(B) presents an impediment. Rule 11-608(B) generally provides that "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character . . . may not be proved by extrinsic evidence." *Scott*, 113 N.M. at 530, 828 P.2d at 963 (noting that Rule 11-608(B)

11

"prohibits the use of extrinsic evidence for the purpose of attacking a witness's credibility"). Victim's alleged act of sending Defendant a letter appears to constitute an instance of "specific conduct" that cannot be proved by extrinsic evidence under Rule 11-608(B).

To the extent that Defendant offered the letter to prove state of mind, we question how either the act of sending the letter or its contents could be said to demonstrate lack of fear on Victim's part. And even if we were to set these misgivings aside, we note that the letter was allegedly written by Victim eleven days after the underlying incident. Victim's state of mind at that time would appear to be entirely irrelevant. The exclusion of the letter was therefore appropriate. *See generally* Rule 11-402 NMRA ("Evidence which is not relevant is not admissible.").

On appeal, Defendant now argues that the trial court should have admitted the letter for impeachment purposes pursuant to Rule 11-613(B) NMRA because its contents conflicted with Victim's testimony at trial that she did not apologize for hitting Defendant, that she did not seek contact with Defendant after the incident, and that she was afraid of Defendant. Taking a charitable view of the transcript, the only aspects of this argument that were suggested below concern Victim's alleged conduct in sending the letter and lack of fear of Defendant. However, it is the alleged act of sending the letter that disputes Victim's statement that she did not seek contact with

Defendant after the accident; the contents of the letter are irrelevant on this issue. As previously stated, Rule 11-608(B) bars extrinsic evidence. As mentioned above, we are not persuaded that the content of the letter demonstrates lack of fear. Accordingly, to the extent that the argument was advanced below, the trial court could have properly excluded the letter on the ground that it lacked impeachment value.

Because Defendant did not specifically argue below that the apologetic content of the letter conflicted with Victim's testimony at trial, we decline to address the matter. However, Defendant did indicate to the trial court that he sought to prove that Victim made an apology. We note that this aspect of the letter may have been material and could have had some impeachment value, insofar as Victim had expressly denied apologizing for hitting Defendant. However, we ultimately perceive no error. While the trial court may have prevented Defendant from publishing the letter to the jury, it allowed him to testify at trial that Victim sent him a letter of apology. Because the trial court permitted Defendant to present evidence of the letter's existence and its contents and to impeach Victim through his own testimony, we perceive no prejudice, and thus, no reversible error. *See generally State v. Ervin*, 2002-NMCA-012, ¶ 17, 131 N.M. 640, 41 P.3d 908 (filed 2001) ("[W]ithout prejudice, there is no reversible error.").

**Defendant's Incarceration:  Cumulative Error**

Finally, Defendant contends that his conviction should be set aside pursuant to the doctrine of cumulative error. "The doctrine of cumulative error requires reversal when a series of lesser improprieties throughout a trial are found, in aggregate, to be so prejudicial that the defendant was deprived of the constitutional right to a fair trial." *State v. Duffy*, 1998-NMSC-014, ¶ 29, 126 N.M. 132, 967 P.2d 807, *holding modified on other grounds by State v. Gallegos*, 2007-NMSC-007, 141 N.M. 185, 152 P.3d 828. The doctrine of cumulative error is strictly applied. *State v. Martin*, 101 N.M. 595, 601, 686 P.2d 937, 943 (1984). It cannot be the basis for reversal when "the record as a whole demonstrates that a defendant received a fair trial." *Id.*

Based upon our decision to affirm on the issues discussed above, we are of the opinion that the doctrine of cumulative error does not apply to those issues. *See State v. Larson*, 107 N.M. 85, 86, 752 P.2d 1101, 1102 (Ct. App. 1988) (recognizing that where there is no error there can be no cumulative error).

In addition to the issues previously discussed, Defendant complains that the trial court did not allow him to explain to the jury why he was incarcerated. Victim testified that she had previously stated that she saw Defendant following her, thereby violating his conditions of release. In order to impeach Victim, Defendant sought to testify that he was incarcerated at that time on the charges in this case. The trial court allowed Defendant to testify that he was incarcerated but refused to allow Defendant

14

to indicate that he was incarcerated on the charges in this case. The trial court explained that it did not want the jury to acquit on the ground that Defendant had already served time for the underlying offense.

On appeal, Defendant explains that his inability to testify as to the reason he was incarcerated unduly prejudiced him because, without knowing why he was in jail, the jury might have inferred that he had committed other criminal offenses. However, Defendant never advanced this argument below. *See generally State v. Harrison*, 2000-NMSC-022, ¶ 27, 129 N.M. 328, 7 P.3d 478 ("[The d]efendant, in order to preserve an argument for appeal, must alert the trial court as to which theory is at issue in order to allow the trial court to rule on the objection.").

On appeal, the reviewing court will not consider issues not raised in the trial court unless the issues involve matters of jurisdictional or fundamental error. *In re Aaron L.*, 2000-NMCA-024, ¶ 10, 128 N.M. 641, 996 P.2d 431. Although Defendant does not argue fundamental error, we note that Defendant's unpreserved issue does not rise to such a level, insofar as the evidence could properly have been excluded on grounds that the danger of unfair prejudice outweighed any slight probative value. *See generally* Rule 11-403.

**CONCLUSION**

For the foregoing reasons, we affirm Defendant's conviction.

**IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Chief Judge**

**WE CONCUR:**

_____
**MICHAEL E. VIGIL, Judge**

_____
**ROBERT E. ROBLES, Judge**