This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                         **NO.  28,504**

**RUSSELL WILSON,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CIBOLA COUNTY**
**Camile Martinez-Olguin, District Judge**

Gary K. King, Attorney General
Margaret McLean, Assistant Attorney General
Santa Fe, NM

for Appellee

Alex Chisholm
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**KENNEDY, Chief Judge.**

This case raises the issue of whether three-month time spans in the indictment against Russell Wilson (Defendant) were impermissibly vague and whether the children's testimony provided substantial evidence to allow the charges to go to the jury. We hold that the charges were acceptably framed and were based on the children's narratives of specific instances of abuse. We also hold that their testimony provided substantial evidence to deny Defendant's motion for a directed verdict and that the jury instructions regarding child abuse were supported by evidence and were not misleading. We affirm.

## I. BACKGROUND

Defendant married Julie in February 2005. Julie had three children from previous marriages: B.R., J.R., and A.K. Julie and her children had been living on her parents' property in Grants, New Mexico. Soon after the marriage, Defendant, Julie, and the three children moved to a house on Tumble Weed Road in Milan, New Mexico. The children later stated that Defendant physically and sexually abused them during their time in that house. A year later, Child Protective Services (CPS) responded to a referral and checked on the family. Within days, Julie sent the children back to live at their grandparents' house. Once they were back with their grandparents, the children disclosed Defendant's abuse to their grandmother, and she called CPS.

The family took some steps with CPS until Defendant and Julie traveled with the children to Durango, Colorado, where they all lived out of their van in a Wal-Mart parking lot for several weeks. Eventually, Defendant and Julie were arrested by Colorado authorities, and the children were sent to live with their grandparents, who now serve as their foster parents.

Defendant was charged with several counts of physical and sexual abuse of the children, taking place during the year that they lived on Tumble Weed Road. A jury found him guilty of thirteen counts in September 2007. Defendant appealed.

## II. DISCUSSION

Defendant's arguments may be summarized into two main points. First, he challenges the legal adequacy of the indictment, claiming that the three-month time periods the State used in charging him are randomly constructed and impermissibly vague. Second, Defendant also claims that the trial testimony of the children as witnesses was not sufficient to support the charges and that, therefore, he should have been granted his motions for a directed verdict and that the jury instructions on the child abuse charges were in error.

### A. Objection to the Amended Indictment Was Waived

Defendant argues that his indictment was not particular enough with regard to the time and nature of his offenses under the nine-factor test in *State v. Baldonado*,

1998-NMCA-040, ¶¶ 26-28, 124 N.M. 745, 955 P.2d 214.  In the case at hand, defense counsel initially challenged the legal sufficiency of the indictment in his motion to dismiss on due process grounds because "of the vague and extended time[]frames alleged."  However, at the pretrial hearing on Defendant's motion to dismiss, defense counsel told the court that he no longer objected to any time frame issues.  At the hearing, two things occurred:  (1) the State extensively amended its indictment, and (2) defense counsel stated that the other arguments raised in his motion to dismiss were no longer at issue.  Defense counsel stated:

> [M]ost of the rest of the . . . issues . . . raised that I had questions about [were] the time frames, and the State has indeed . . . , to their credit, addressed those in a very honorable fashion to say, "Look, we don't think we can proceed on these time frames." . . . The primary issues that I had were those crimes that were listed in seven counts . . . that the State . . . is seeking to dismiss and, obviously, we have no objection.

After indicating that he was no longer concerned with those time frames, counsel did not argue that he had further concerns with time frames for each charge.  We conclude that defense counsel failed to invoke a ruling on the issue by indicating to the district court that the time frame issue had been resolved by the State's amended indictment and failed to alert the district court to any further objection that might have existed following the amendment.  Defendant therefore failed to preserve his objection to the indictment as it stood before the trial began.

**B. There Was Sufficient Evidence to Support the Dismissal of Defendant's Motion for a Directed Verdict**

Defendant next argues that the children's testimony at trial did not provide evidence substantial enough to support his convictions. He first states that he should have been granted his motion for a directed verdict. "The question presented by a directed verdict motion is whether there was substantial evidence to support the charge." *State v. Dominguez*, 115 N.M. 445, 455, 853 P.2d 147, 157 (Ct. App. 1993). "In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We will first address Defendant's ongoing concern with the time spans and then examine the evidence supporting each of his convictions in turn.

**1. The Time Spans Submitted to the Jury Are Supported by the Children's Testimony**

Defendant argues that the children either failed to provide exact dates or were vague as to the time frames of the incidents that they testified about, which the State charged in three-month spans. At stake is his due process right to reasonable notice of the charges against him in order to prepare his defense. *See Baldonado*, 1998-NMCA-040, ¶ 18.

The [*Baldonado*] test reviews the reasonableness of the [s]tate's efforts at narrowing the time of the indictment and measures the potential prejudice to the defendant of the time frame chosen by the [s]tate. No one factor is determinative. Rather, each can be expected to play a different role depending on the facts of each case.

*Id.* ¶ 26.

[T]he [*Baldonado*] factors include, but should not necessarily be limited to, the following:

1. The age and intelligence of the victim and other witnesses, and their ability to particularize the date and time of the alleged offense;

2. The surrounding circumstances[,] including whether a continuing course of conduct is alleged, as opposed to a relatively few, discrete[,] or isolated events;

3. The extent to which [the] defendant had frequent, unsupervised access to the victim;

4. The nature of the offense, including whether it is likely to occur at a specific time or is likely to have been discovered immediately;

5. The length of the alleged period of time in relation to the number of individual criminal acts alleged;

6. The length of time asserted in the indictment;

7. The passage of time between the period alleged for the crime and the time the abuse was asserted and/or the time [the] defendant was arrested, and/or indicted;

8. The extent and thoroughness of the [s]tate's efforts to narrow the time frame; and

9. Whether the defendant can assert a plausible alibi defense.

6

*Id.* ¶ 27. "Application of these factors cannot, and should not, be reduced to a formula." *Id.* ¶ 28.

In *Baldonado*, this Court concluded that a two-year time span on the indictment was not particular enough. *Id.* ¶ 33. Subsequent application of the *Baldonado* factors has found that even a time span of twenty-seven months could satisfy the test if it was the best the state could do. *State v. Tafoya*, 2010-NMCA-010, ¶ 18, 147 N.M. 602, 227 P.3d 92 (stating that a twenty-seven-month time span did not violate the defendant's due process rights in light of the *Baldonado* factors because the state had narrowed the time frame as much as possible). This Court has approved a time span of three months, which was the number of months used in this case. *State v. Altgilbers*, 109 N.M. 453, 467, 786 P.2d 680, 694 (Ct. App. 1989) (stating that a three-month charging period was acceptable and that "[i]f the record indicated that the state could have been more specific as to time, [the] defendant's argument would have more force. The circumstances here, however, did not oblige the state to provide greater specificity. Notice need be only specific enough to enable the accused to prepare his defense"). However, when the State has information that would allow it to narrow the charging period, and it does not, that may constitute error. *State v. Ervin*, 2002-NMCA-012, ¶ 16, 131 N.M. 640, 41 P.3d 908 (holding that because the

7

state had evidence that narrowed the time frame to four months, it was wrong to keep the original sixteen-month time span).

In this case, the State charged, using the time span of three-month periods over the course of approximately a year, that the victims lived on Tumble Weed Road with Defendant and their mother. Defendant focuses in his brief on only the first *Baldonado* factor (age and intelligence of the victims) and argues that the children were old enough (16, 15, and 10) at the time of the trial to be able to give a more specific range of dates for each charged offense. He does not cite any evidence for this proposition, or claim that the State had the ability to narrow the time frame further.

In *Altgilbers*, it was considered sufficient that "the victims gave specific accounts of the acts of [criminal sexual penetration] and [criminal sexual contact], and the locations in which the acts occurred." 109 N.M. at 471, 786 P.2d at 698. In the case at hand, although the children could not give exact dates for each instance of abuse, they could provide particular locations and circumstances as we examine below. Due to their specific narratives for different counts, and no evidence of the State's ability to further narrow the time frame, we conclude that the three-month charging period in this case is acceptable.

**2.      The Children's Testimony Was Sufficient to Support the Charges**

"In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Cunningham*, 2000-NMSC-009, ¶ 26. On appeal, the appellate court views the evidence in the light most favorable to the verdict, resolving all conflicts, and indulging all reasonable inferences in favor of the verdict. *See State v. Apodaca*, 118 N.M. 762, 765-66, 887 P.2d 756, 759-60 (1994). It is for the jury to determine the credibility of a witness. *State v. Trujillo*, 2002-NMSC-005, ¶ 21, 131 N.M. 709, 42 P.3d 814.

**a. Child Abuse**

Defendant was convicted of three counts of child abuse against A.K., over the three time spans between July 21, 2005 and October 21, 2005 (Count 11), between October 22, 2005 and January 22, 2006 (Count 14), and between January 23, 2006 and April 23, 2006 (Count 15). Besides arguing that A.K. gave no dates in his testimony, he claims that the alleged incidents did not rise to the statutory definition of child abuse, which requires that "[D]efendant caused [A.K.] to be placed in a situation which endangered the life or health of [A.K.]" NMSA 1978, § 30-6-1(D)(1) (2005) (amended 2009).

In *State v. Chavez*, 2009-NMSC-035, ¶ 16, 146 N.M. 434, 211 P.3d 891, our Supreme Court explained that "by classifying child endangerment as a third-degree

9

felony, our Legislature anticipated that criminal prosecution would be reserved for the most serious occurrences, and not for minor or theoretical dangers." Therefore, evidence to support a conviction must establish that a defendant's conduct "created a substantial and foreseeable risk of harm." *Id.* ¶ 22 (emphasis, internal quotation marks, and citation omitted). In assessing whether conduct creates a substantial and foreseeable risk, we look to (1) "the gravity of the threatened harm," *id.* ¶ 23; (2) whether the Legislature has indicated that the defendant's conduct is inherently dangerous, *id.* ¶ 25; and (3) "the likelihood that [a particular] harm will occur," *id.* ¶ 26. Defendant argues that there was no evidence presented "as to how being spanked with a belt could result in endangerment since there was no medical evidence presented regarding physical injuries."

> [I]n New Mexico, a parent has a privilege to use moderate or reasonable physical force, without criminal liability, when engaged in the discipline of his or her child. Discipline involves controlling behavior and correcting misbehavior for the betterment and welfare of the child. The physical force cannot be cruel or excessive if it is to be justified. The parent's conduct is to be measured under an objective standard.

*State v. LeFevre*, 2005-NMCA-101, ¶ 16, 138 N.M. 174, 117 P.3d 980. In *LeFevre*, this Court stated that a father grabbing his daughter's hand so tightly that it bruised in order to prevent her from reaching into a backpack did not rise to the level of battery because "[t]he force was relatively inconsequential; the injury was marginal.

10

[The d]efendant's conduct was not cruel or excessive, and considering the totality of circumstances, it was moderate and reasonable." *Id.* ¶ 21.

A.K. testified that Defendant "tied me in my room" by attaching a string to a screw and tying it to the doorknob. He said that he was punished by being tied in his room "[m]ostly every day . . . [f]or about the whole day" and had to beg to use the bathroom or get food or water. A.K. testified that, after he tried to escape through his window, Defendant screwed it shut. Others saw the screws in the window and by the doorknob, and his sisters described how he was locked in his room and would get his arms taped together with duct tape. He also testified that he would be punished by getting his "butt busted by a belt" by Defendant, sometimes with his pants down. A.K. testified that Defendant "would duct tape my hands together and my mouth[,] and it would go all around my head[,] and he would put one over my nostril[,] and he would threaten to put another duct tape over the other nostril so I couldn't breath[e]." He said all of these events occurred more than once. A.K. testified that these events occurred while he was living on Tumble Weed Road, including after CPS first came to their house and before the children moved back with their grandparents for a short time. We hold that this testimony is sufficient to satisfy the elements of the child abuse counts of the indictment as they apply to A.K.

11

In Counts 10 and 13, Defendant was charged with intentionally, or with reckless disregard, placing J.R. in a situation that endangered her life or health. He was charged with the same regarding B.R. in Counts 9 and 12. J.R. testified that she "would get whipped with a belt . . . on [her] butt . . . with [her] pants pulled down" for anything that made Defendant angry. B.R. testified that Defendant started treating the children differently when they moved to Tumble Weed Road and would ground them and keep them in their rooms all day. She testified that he would hit her and her siblings with a belt on their "back, legs, [and] bum," if they got in trouble. This testimony similarly constitutes sufficient evidence.

"The question is whether the [district] court's decision is supported by substantial evidence, not whether the [district] court could have reached a different conclusion." *In re Ernesto M.*, 1996-NMCA-039, ¶ 15, 121 N.M. 562, 915 P.2d 318. Although medical evidence of the abuse was not presented, a reasonable juror could have concluded from the children's testimony that the punishments exceeded the parental privilege and that Defendant was guilty of endangering the health of the children. We conclude that the district court's decision to deny Defendant's motion for a directed verdict on the child abuse counts was supported by substantial evidence in the form of the children's testimony.

**b.     Sexual Abuse Crimes**

12

With regard to J.R., Defendant was convicted of one count of criminal sexual penetration of a minor in the second degree (person in position of authority), and one attempt of the same (Counts 1 and 2); three counts of criminal sexual contact with a minor (person in position of authority) (Counts 3-5); and one count of child abuse (Count 13).

Count 3 charged that Defendant touched or applied force to J.R.'s breasts between July 21, 2005 and October 21, 2005. She stated that the first time Defendant touched her was a few weeks after they moved to Tumble Weed Road when she was vacuuming, and he put his hand up her shirt. Count 4 charged that Defendant touched or applied force to J.R.'s vagina between October 22, 2005 and January 22, 2006. She testified that the next day he put his hand down her pants and touched the outside of her vagina. Count 5 charged that Defendant touched or applied force to J.R.'s leg with his penis between January 23, 2006 and April 23, 2006. She testified that, on another occasion, on her parents' bed, he put his penis on her leg. She testified as well that he made her kiss him frequently. These constitute at least three separate instances that were charged as three counts of criminal sexual contact with a minor.

Count 1 charged that Defendant caused the insertion, to any extent, of his penis into J.R.'s mouth between July 21, 2005 and October 21, 2005. J.R. testified that one time, when she was sitting on a chair in the kitchen, he made her put his penis in her

13

mouth. Count 2 charged that Defendant attempted to cause the insertion, to any extent, of his penis into J.R.'s vagina. J.R. testified that another time, when she and Defendant were in a bedroom and her siblings were outside, he took her pants and underwear off, pulled his pants down, and tried to put his penis in her vagina before she ran off. Her testimony supports Defendant's convictions on Counts 1 and 2 for criminal sexual penetration and attempted criminal sexual penetration of a minor.

With regard to B.R., Defendant was convicted of three counts of criminal sexual contact with a minor and one count of child abuse. He argues again that her testimony was vague and that she failed to provide any time frames.

Defendant was convicted on Count 6 as having touched or applied force to B.R.'s breasts between July 21, 2005 and October 21, 2005. She testified that he touched her breasts both over and under her clothes. She stated that this happened once a day after the move. Defendant was convicted on Counts 7 and 8 of having touched or applied force to B.R.'s vagina in Count 7 between October 22, 2005 and January 22, 2006, and in Count 8 between January 23, 2006 and April 23, 2006. J.R. testified that she once saw Defendant on top of B.R. in their parents' room with their pants pulled down. B.R. testified that Defendant touched her on her vagina both over and under her clothes. B.R. also testified that, after they moved to Tumble Weed

14

Road, Defendant forced her to touch his penis while they were in her mother's room. Her testimony adequately supports his convictions.

**3.      The Incidents Did Not Need to be Charged as a Single Ongoing Crime**

Defendant argues that, because the children were vague on time frames, the prosecution should have charged one count each of ongoing criminal sexual conduct against J.R. and B.R.  However, Defendant's reliance on *State v. Dominguez*, 2008-NMCA-029, 143 N.M. 549, 178 P.3d 834 is misplaced.  *Dominguez* states that, "[w]hen a child cannot remember specific dates, a defendant may still have adequate notice if the child or other witnesses are able to provide facts sufficient to identify distinct incidents of abuse."  *Id.* ¶ 10.  In *Dominguez*, this Court only limited prosecutors from charging separate offenses with "no distinguishing facts or circumstances at all[.]"  *Id.*

As detailed above, the children identified distinct incidents of abuse. They provided locations and specific occurrences, rather than merely an ongoing pattern. Therefore, we hold that there was no error in denying Defendant's motion for a directed verdict.

**4.      No Fundamental Error in the Jury Instructions**

Defendant further argues that the instruction given to the jury, regarding the child abuse charges against all three children, "misguided the jury into thinking that

evidence had been presented supporting this instruction." Defendant argues that it is the "constant repetition of this charge" that would mislead the jury into thinking he is a bad person. Defendant also restates his argument that the sexual crimes should have been charged as one ongoing count for each of the girls.

> The standard of review we apply to jury instructions depends on whether the issue has been preserved. If the error has been preserved[,] we review the instructions for reversible error. If not, we review for fundamental error. Under both standards[,] we seek to determine whether a reasonable juror would have been confused or misdirected by the jury instruction.

*State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (internal quotation marks and citations omitted). Defendant did not make any objection to the jury instructions at trial. Therefore, the issue was not preserved, and we review the instructions for fundamental error. *State v. Barber*, 2004-NMSC-019, ¶ 17, 135 N.M. 621, 92 P.3d 633 (providing that fundamental error only occurs in "cases with [the] defendants who are indisputably innocent, and cases in which a mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused").

Seven counts of child abuse were submitted to the jury—three for A.K. and two each for J.R. and B.R. The jury found Defendant guilty of five of the charges. There is no record of any jury confusion on the matter. The only authority Defendant cites for error in the jury instructions argument is *Baldonado* and *Dominguez*, which we

16

have already determined unpersuasive for his position. Nothing in the record indicates that the conviction was fundamentally unfair or that Defendant was indisputably innocent. Therefore, there was no error in instructing the jury on the child abuse charges.

**III. CONCLUSION**

We conclude that the three-month time spans in the indictment were reasonable in this case. The children's testimony provided substantial evidence of abuse, and the charges were correctly submitted to the jury. We affirm.

**IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Chief Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**MICHAEL E. VIGIL, Judge**

17